[No. 30581.    Department Two.    January 14, 1949.]

CLIFFORD CARPENTER, *Appellant*, v. ILA M. BUTLER *et al.*, *as*
*Board of Trustees of the State Teachers' Retirement*
*System, Respondents.*[1]

[1]Reported in 201 P. (2d) 704.

W. A. Toner, for appellant.

The Attorney General and Lyle L. Iversen, Assistant, for respondents.

JEFFERS, C. J.—This is an appeal by Clifford Carpenter, claimant and relator, from a judgment made and entered by the superior court for Thurston county on December 5, 1947, affirming an order made and entered by the board of trustees of the teachers' retirement system of the state of Washington, on July 17, 1947, by which order the board denied relator's request for membership service credit for the period for which he was in the civil air patrol and for the period he served as a Federal civil service employee. instructing in the army air force. The judgment appealed from also dismissed relator's appeal.

The record before the superior court and before this court is the same record which was presented to the board, and consists entirely of letters, orders, and other written documents. A transcript of the record was certified to and filed in the superior court for Thurston county by L. D. Burrus, secretary-manager of the Washington state teachers' retirement system. It was stipulated by counsel for the respective parties that the record be submitted to the court without further identification or authentication of any document contained therein, except that testimony and additional evidence might be offered relative to whether or not a letter appearing therein, dated October 10, 1946, addressed to Mr. Clifford Carpenter, Snohomish, Washington, and signed by L. D. Burrus, secretary-manager, was mailed and delivered. However, it was subsequently also stipulated that no testimony was taken upon the trial before the superior court, and that the cause was tried upon the certified record submitted by the board.

The procedure followed by relator in appealing from the action of the board to the superior court for Thurston county is that prescribed by Laws of 1947, chapter 80, §§ 61, 63, and 64, pp. 568, 569 (Rem. Supp. 1947, §§ 4995-80, 4995-82, 4995-83), the last section providing:

"The hearing on appeal shall be de novo and follow the practice in the trial of appeals from justice courts except that there shall be no jury."

Section 65 of the same chapter provides:

"Appeals from the judgment of the superior court may be taken to the Supreme Court in the manner provided for taking appeals in equity cases." Rem. Supp. 1947, § 4995-84.

The board of trustees of the teachers' retirement system (hereinafter referred to as the board) consists of the state superintendent of public instruction, *ex officio*, the state insurance commissioner, *ex officio*, and five members of the retirement system to be chosen by the state board of education for a term of three years. Three of such members must be classroom teachers. See Laws of 1947, chapter 80, § 4, p. 552 (Rem. Supp. 1947, § 4995-23).

Laws of 1947, chapter 80, § 10, p. 553 (Rem. Supp. 1947, § 4995-29), also provides that the board shall, by a majority vote of all its members, appoint a secretary-manager, who shall not be a member of the board and who shall serve until a successor is appointed.

It may be further stated here that Mr. L. D. Burrus, above mentioned, is the duly appointed secretary-manager of the teachers' retirement system and filled such office during all the time herein referred to.

We have checked the record and are of the opinion that the findings of fact made and entered by the trial court are amply supported by the record, and we adopt such findings as the material facts in the case. We quote the findings:

"(1) That Relator above named prior to November 25th, 1942, was County Superintendent of schools at Everett, Washington and a member of the Teachers' Retirement System of the State of Washington. On the date last referred to Relator wrote to the Secretary-Manager of the Teachers' Retirement System, advising him that he was

leaving immediately for the armed forces. On December 2nd, 1942, Relator entered upon active duty with the Civil Air Patrol as a radio operator at Brownsville, Texas.

"(2) That on December 4th, 1942, a Mr. Ronald A. Stewart, Assistant Operations Officer of Civil Air Patrol, Coastal Patrol No. 12 at Brownsville, Texas, on behalf of the Relator Clifford Carpenter, wrote to L. D. Burrus, the Secretary-Manager of the Teachers' Retirement System, to inquire whether Mr. Carpenter's service with the Civil Air Patrol would be considered the same as service with the armed forces for purpose of service credit in the Teachers' Retirement System, and on December 8th, 1942, Mr. L. D. Burrus, in replying to the Stewart letter, stated:

" 'Mr. Carpenter's service with the Civil Air Patrol will be considered the same as service with the armed forces, for which he may receive service credit in the Washington's State Teachers' Retirement System, upon the payment of proper dues.'

"(3) The Civil Air Patrol was at the time when Relator reported for active duty a division of the Office of Civilian Defense of the United States, but on April 29th, 1943, was placed under the supervision of, and became an auxiliary and official agency of the United States Army Air Forces. Relator remained on active duty with the Civil Air Patrol until May 4th, 1943. During this period of active duty he was free to terminate his service, and on May 4th, 1943, he accepted a Federal Civil Service position as instructor with the United States Army Air Forces, and at that time did terminate his active duty with the Civil Air Patrol.

"(4) The Relator, a member of the Civil Air Patrol of the United States of America, served on active duty with the Civil Air Patrol Coastal Patrol from December 3rd, 1942, to May 4th, 1943, as a radio operator on anti-submarine patrol.

"(5) From May 4th, 1943, until after the end of the war Relator served as a Federal Civil Service employee, instructing in the Army Air Forces under United States Army Orders. The Army Air Forces schools in which Relator instructed were not supervised or financed by a public educational institution.

"(6) During Relator's service as a member of the Civil Air Patrol, and as a Federal Civil Service employee, the Relator made regular contributions to the annuity fund of the Teachers' Retirement System, which were accepted and retained by the Teachers' Retirement System.

"(7) In July, 1943, the Teachers' Retirement Board had issued a ruling to the effect that members who accept teaching or educational employment involving service to the United States Military, Naval or Air Forces may be allowed credit for the same upon application after their return to public school educational employment and payment of annuity fund contributions, provided that the service for which they request credit was supervised and/or paid for by a public educational institution. Members who accept employment not included in the foregoing may not be allowed credit.

"(8) On October 10th, 1946, the Secretary-Manager of the Teachers' Retirement System by letter advised Relator of the ruling of the Board, and that his service was not of the type for which credit would be allowed, and requested him to sign vouchers for the return of the annuity contributions which he had made.

"(9) Relator applied to the Board of Trustees of the Teachers' Retirement System for service credit based upon the time he was with the Civil Air Patrol and was serving as a civilian employee of the Army Air Forces, and on July 17th, 1947, the Board through its Secretary-Manager wrote to Relator advising him that his request for membership credit had been denied by action of the Board, whereupon this appeal was taken."

Based upon the foregoing findings, the court concluded:

"(1) The service for which Relator seeks credit was performed by him in a civilian and not a military capacity, and was not of the type for which credit is required to be given under the Washington State Teachers' Retirement Act.

"(2) The action of the Board of Trustees of the Washington State Teachers' Retirement System in denying Relator credit for time when he served with the Civil Air Patrol and during the period when he taught in Army schools is correct.

"(3) Judgment should be entered dismissing Relator's appeal and allowing defendants' costs and disbursements incurred herein."

Judgment was entered in accordance with the findings and conclusions, affirming the order of the board dated July 17, 1947 (incorrectly described in the judgment as December 17th), and dismissing relator's appeal. Relator's appeal to this court followed.

Relator and appellant makes the following assignments of error:

(1) The trial court erred when it denied appellant credit for the time during which he was in active service in the coastal air patrol at Brownsville, Texas, between the months of December, 1942, and May, 1943.

(2) The court erred in denying appellant credit for his service during the time he was an instructor in radar and radio, training pilots and technicians in the regular air forces, from May, 1943, to the end of the war, or more specifically, to June 30, 1945.

It should be further stated that appellant in his brief admits that "because of the loss of his right hand he was physically unqualified to become a member of the armed forces of the United States."

To sustain his contention that the trial court erred in holding that he was not entitled to credit for the period he was in active service in the coastal air patrol at Brownsville, Texas, namely, between December, 1942, and May, 1943, appellant cites Rem. Supp. 1941, § 4995-5 [P.P.C. § 773-9], and particularly the following portion thereof:

"*Provided, further*, That any member [of teachers' retirement fund] who serves the United States as a member of its military, naval or air service, *or in any capacity under the Federal Defense Service*, may receive credit for such service upon presenting satisfactory proof and contributing to the annuity fund." (Italics ours.)

May we state here that we fully appreciate the fine service rendered by the civil air patrol, but nevertheless it admittedly was not until April 29, 1943, which was just a few days before appellant left that service to become an instructor in the air force under civil service, that the civil air patrol was taken over in its entirety by the United States army. We quote from appellant's brief:

"The state's attorney general in his opinion to the secretary manager of the teachers' retirement system, dated October 4, 1946, states:

" 'The organization is made up of civilians who voluntarily contribute their time, equipment and services . . . It is wholly a volunteer private organization which has

been given government sponsorship and guidance. Its functions are similar to those of air raid wardens and other civilians who willingly cooperated in forwarding the war effort.'"

Considerable is said in appellant's brief relative to the service performed by the civil air patrol, and all is to the credit of that organization; but, of course, such statements do not in any way determine whether or not one who was in such service is entitled to credit under the teachers' retirement system.

Appellant first predicates his right to credit upon the following portion of the quoted section: "or in any capacity under the Federal Defense Service." So far as we know or have been advised, there never has been an agency known as the "Federal Defense Service." As stated by respondent, there were many agencies of the Federal government which included the term "defense" in their names, such as "The Defense Housing Corporation," "The Office of Civilian Defense," "The Office of Defense Transportation," "The Defense Plant Corporations," "The Defense Supplies Corporations," and others. All of these civilian agencies contributed to the war effort, but we are of the opinion that the legislature had none of them in mind when it referred to "Federal Defense Service" in the above statute.

It seems to us, as contended by respondent, that the language of the statute upon which appellant relies is clearly ambiguous, and that the legislature has, by its later enactment, in no uncertain terms clarified its meaning.

■ We stated in *State ex rel. Oregon R. & N. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7:

"Courts are not at liberty to speculate upon legislative intent when that body, having subsequent opportunity, has put its own construction upon its prior enactments."

In *Cowiche Growers, Inc. v. Bates*, 10 Wn. (2d) 585, 117 P. (2d) 624, we again stated that, where the legislature has placed its own construction upon a prior enactment, the courts are not at liberty to speculate upon legislative intent. However, we did not apply the rule in the last-cited case, for the reason that it was our opinion that the 1941

act could not be considered as interpretative or explanatory of either the 1937 or 1939 act.

■ It seems to us that Laws of 1947, chapter 142, p. 692 (Rem. Supp. 1947, § 10758-115), entitled "An Act limiting veterans' benefits and advantages to persons who have served in full military or naval service," is a conclusive answer to any contention that the legislature intended that service in the civil air patrol, or in any civilian capacity, would constitute the basis for special pension or retirement rights which had been made available to persons who had served in the armed forces or defense forces of the United States. We quote the material part of chapter 142:

"All benefits, advantages or emoluments, not available upon equal terms to all citizens, including . . . special pension or retirement rights, which by any law of this state have been made specially available to war veterans or to persons who have served in the armed forces or *defense forces* of the United States, shall be available *only to persons who have been subject to full and continuous military control and discipline as actual members of the Federal armed forces. Service with such forces in a civilian capacity, or in any capacity wherein a person retained the right to terminate his service or to refuse full obedience to military superiors, shall not be the basis for eligibility for such benefits.* Service in any of the following shall not for purposes of this act be considered as military service: The Office of Civilian Defense or any component thereof; The American Red Cross; The United States Coast Guard Auxiliary; United States Coast Guard Reserve Temporary; United States Coast and Geodetic Survey; American Field Service; *Civil Air Patrol;* Cadet Nurse Corps, and any other similar organization." (Italics ours.)

Credit which appellant seeks to establish is not based upon time served as a teacher in the public schools of Washington, but what he seeks is, in fact, a gratuitous credit which the legislature sought to make available to veterans.

It should be further noted that the legislature, by Laws of 1947, chapter 80, p. 549 (Rem. Supp. 1947, § 4995-20 *et seq.*), amended the teachers' retirement system act, and by § 26 thereof eliminated the following words from the prior act: "or in any capacity under the Federal Defense

Service." The present section pertaining to this credit now reads:

"Any member who serves the United States as a member of its military, naval or air service, may upon becoming re-employed in the public schools, receive credit for such service upon presenting satisfactory proof, and contributing to the annuity fund, either in a lump sum or installments, such amounts as shall be determined by the Board of Trustees." Laws of 1947, chapter 80, § 26, p. 557; Rem. Supp. 1947, § 4995-45.

This, to our minds, is further evidence of the fact that the legislature never intended to extend gratuitous war-time service credit to persons engaged in any activity other than strictly army, navy, or air corps.

Appellant admits that if chapter 80, *supra,* is applicable, then the decision of the lower court is correct, but appellant contends that chapter 80 has only a prospective application, and that it would be improper to hold that it controls any of the issues in this case. In other words, appellant contends that chapter cannot be applied to him, as it would tend to abrogate some contractural right of appellant, thus making the law *ex post facto* and void as to him.

■ The provisions of the Federal and state constitutions prohibiting *ex post facto* laws have been held to refer only to criminal legislation. See *State ex rel. Hagen v. Superior Court,* 139 Wash. 454, 247 Pac. 942; *Johannessen v. United States,* 225 U. S. 227, 56 L. Ed. 1066, 32 S. Ct. 613.

■■ It seems to us there can be no question but that the legislature intended to define the meaning or limit the effect of statutes already in existence. Laws of 1947, chapter 142, uses this specific language: "which by any law of this state have been made specially available to war veterans." We agree with respondent that when the legislature acts to construe an ambiguity in a pre-existing statute, it is not legislating retroactively. See *State ex rel. American Sav. Union v. Whittlesey,* 17 Wash. 447, 50 Pac. 119. We are of the opinion that chapter 142 is remedial and should be construed broadly to accomplish its purpose.

In our opinion, there is no element of contract in this case. No consideration ran to the state for the credit asked, but to the contrary, appellant is seeking a gratuitous credit for the time he was absent from the teaching profession during the war. We are satisfied that the payments made by appellant to the annuity fund were received because of the representation made by appellant that he was entering the armed forces of the United States.

The letter from Mr. Burrus, under date of December 8, 1942, to Ronald A. Stewart, Assistant Operations Officer, Brownsville, Texas, to the effect that Mr. Carpenter's service with the civil air patrol would be considered the same as service with the armed forces, does not purport to be the action of the board. It is further apparent from the record that Mr. Burrus did not understand the nature of civil air patrol at the time he wrote the letter. The amounts paid in by appellant were tendered back to him as soon as it was discovered that he had not been in the armed forces but had been serving in a civilian capacity.

Appellant also argues, as we understand it, that the civil air patrol was an auxiliary of the armed forces of the United States, and therefore, under Laws of 1941, chapter 201, § 1, p. 592 (Rem. Supp. 1941, § 10758-3 [P.P.C. § 746r-1]), as amended by Laws of 1943, chapter 274, p. 853 (Rem. Supp. 1943, § 10758-3), the veterans' re-employment act, his service in the civil air patrol entitles him to participate in retirement benefits offered by statute. We think this contention is also disposed of by Laws of 1947, chapter 142, *supra*.

■ Appellant seems to rely upon the fact that the civil air patrol is sometimes described as an "auxiliary" of the armed forces. The word "auxiliary" did not appear in Laws of 1941, chapter 201, § 1, but that section was amended by Laws of 1943, chapter 274, to read in part as follows:

"Any man or woman who is a resident of this state, and who, as a volunteer, or otherwise, has or shall hereafter become a member of the United States army, navy, marine corps, public health service or coast guard, or any component part or *auxiliary* unit thereof, or shall become a

member of any other branch or auxiliary of the armed forces of the United States heretofore or hereafter created and who has been or shall be called to active service therein, and who, in order to perform such service has left or leaves a position, other than a temporary position, in the employ of any employer, and who (1) is honorably discharged or receives a certificate of satisfactory completion of active duty pursuant to section 3 (a) of the National Guard and Reserve Officers Mobilization Act, or section 8 (a) of the Selective Training and Service Act of 1940, or furnishes other satisfactory proof of having satisfactorily completed such term of service; (2) *is still qualified to perform the duties of such position;* and (3) makes application for re-employment within forty (40) days after he is relieved from such active duty or service . . . (b) if such person was in the employ of this state or any municipality or political subdivision thereof, such person shall be restored to such position or to a position of like seniority status and pay: *Provided, however,* That restoration shall not take place if such service exceeds the period of the tenure of office of the elective or appointive official from whom the employment flows." (Italics ours.)

We are of the opinion that this act does not apply to appellant. At the time he entered the civil air patrol, he held an elective office. The term of office for which he was elected has expired, and consequently he could not be, and he is not asking to be, restored to such office. In this connection, we call attention to a part of Rem. Supp. 1941, § 10758-4 [P.P.C. § 746r-3] :

"When any elective officer of this state or any political subdivision thereof, including any judicial officer, shall be ordered into active service as provided in the foregoing section, he shall be deemed to have been granted leave of absence for such period of service. In the case of any judicial officer, such order to active service shall be deemed to create a case of extreme necessity and the Governor shall extend the leave of absence to cover the period of such active service. No leave of absence provided for herein shall operate to extend the term for which the occupant of any elective position shall have been elected."

Certainly appellant, at the time he entered upon civil air patrol duty in 1942, did not rely upon Laws of 1943, chapter 274, *supra.*

During a great part of the time for which appellant seeks credit, he was merely a civil service employee of the Federal government. He was free to come and go as he pleased, and could quit at any time he desired to do so.

. Did the type of service performed by Mr. Carpenter as a civilian employee of the government entitle him to credit, not because of military service, but because he was an out-of-state school teacher during that time?

Credit for out-of-state work as a teacher may be allowed under certain circumstances. Rem. Supp. 1941, § 4995-5, provides in part as follows:

"*Provided, still further*, That any member who leaves the State of Washington after becoming a member of the retirement system, may, upon being reemployed in the public schools of this state, be credited with membership service in an amount which, when added to the out-state credit for prior service, shall not exceed the total amount of out-state service credit provided for above: *Provided, also*, That satisfactory proof of such service rendered elsewhere during the interim period, as a *teacher* or *non-certificated employee*, as defined in this act, shall be furnished to the Board of Trustees, and contributions to the annuity fund shall be made for such credit in the same amount, either in a lump sum or in installments approved by the Board of Trustees, as would have been made had the member rendered such service in the State of Washington during the interim period." (Italics ours.)

Under the above statute, service out of the state must be rendered "as a teacher or non-certificated employee, as defined in this act." Rem. Supp. 1941, § 4995-1, subsection 27a [P.P.C. § 773-1], defines the word "teacher" as follows:

"The word 'teacher' wherever used in this act shall be held and construed to mean and include any person regularly employed and qualified as a teacher, instructor, principal, supervisor, state, county or city superintendent in the public schools of this state, or as assistant to any such teacher, instructor, principal, supervisor or superintendent: *Provided*, That an assistant shall mean such person only as is engaged in educational work and is qualified as a teacher: *Provided, further*, That in all cases of doubt the Board of Trustees hereinbefore defined shall determine whether any person is a teacher as defined by this act."

The words "non-certificated employee" are defined by subsection 27b of the act, as follows:

"The words 'non-certificated employee' used in this act shall be held and construed to mean and include any person employed in the public schools of the state holding a position not requiring a teaching certificate for such position: *Provided*, That Clerks of school districts shall be considered employees for the purpose of this act."

It will again be noticed that the above definitions relate to employment in the public schools of the state of Washington.

It appearing that the section in regard to out-of-state credit requires that service out of the state must have been rendered as a teacher or noncertificated employee, as defined in the act, it is apparent, we think, that an ambiguity was created, for certainly one teaching outside the state cannot be teaching in the public schools of the state of Washington. The board was of the opinion that it was necessary to make a ruling on this matter. As one teaching within the state of Washington could qualify only if he taught in the public schools, the board took the view that, to receive out-of-state credit, one must also be teaching in a public school. The board, in our opinion, is given specific authority, under subsection 27a, *supra*, to determine doubtful cases as to whether or not a person is a teacher. In July, 1943, the board adopted the following ruling:

"(1) Members who enter the United States military, naval or air service are entitled to service credit in the Retirement System, subject only to making contributions to the annuity fund.

"(2) Members who accept teaching or educational employment involving service to the United States military, naval or air forces may be allowed credit for the same upon application after their return to public school educational employment and payment of annuity fund contributions; provided, that the service for which they request credit was supervised and/or paid for by a public educational institution.

"(3) Members who accept employment not included in categories (1) and (2) may not be allowed credit."

We find nothing in the record to indicate that the instructional work done by appellant while he was a civilian employee of the Federal government, namely, between the dates for which he is claiming credit for such service, was public school employment, or was supervised or paid for by a public educational institution.

It follows, in our opinion, that, since appellant's service was not such as to qualify him under the rules of the board as a "teacher," for which out-of-state credit could be allowed, he was not, under the board's ruling, entitled to credit for that service.

For the reasons herein assigned, we are of the opinion that the judgment of the trial court must be, and it is, affirmed.

MALLERY, HILL, STEINERT, and ROBINSON, JJ., concur.