[No. 49262-0. En Banc. May 12, 1983.]

J. FRED JOHNSON, ET AL, *Appellants,* v. CONTINENTAL WEST, INC., ET AL, *Respondents.*

LEE MARSON, *Appellant,* v. CLARENCE OSTELLA, ET AL, *Respondents.*

556

*Brooks & Larson, P.S., Terry A. Brooks,* and *John K. Johnsen,* for appellants.

*Halverson, Applegate & McDonald, Inc., P.S., Blaine G. Gibson, Walter G. Meyer, Robert C. Tenney, Nashem, Prediletto, Schussler & Halpin, Norman R. Nashem, Jr., Thomas A. Prediletto, Jeffers, Danielson, Sonn & Aylward, James M. Danielson,* and *Susan Cawley,* for respondents.

STAFFORD, J.—These are consolidated cases in which appellants challenge the trial courts' issuance of summary judgments in actions seeking common law indemnity against alleged active tortfeasors.

## Johnson v. Continental West, Inc.

In 1977 Kelli Christenson, age 3, received permanent injuries when a display accessories board fell on her while she was shopping with her mother in appellant Johnson's

store. Her parents sued appellant Johnson on behalf of Kelli and themselves.

In 1980 the Superior Court approved settlement of the minor's claim against appellant Johnson. On the same day her parents signed a release settling their own claims. Thereafter, Johnson brought the instant action against respondent Continental West, Inc., the display's distributor. Johnson claimed a right of common law indemnity for the amount of the settlement plus attorney's fees and costs. Respondent, Oak Classics Co., manufacturer of the display, was subsequently joined as a third party defendant.

On July 26, 1981, the Tort Reform and Products Liability Act (Tort Reform Act) went into effect. In September 1981 respondents moved for summary judgment. It was asserted RCW 4.22.040(3) of the Tort Reform Act eliminated the common law right of indemnity and that Johnson was not eligible to contribution by virtue of RCW 4.22.920 because the settlements had been entered into prior to July 26, 1981. The trial court granted the motion.

## Marson v. Ostella

In 1980 appellant Marson employed respondent Ostella to do some blasting on Marson's property. The blasting resulted in property damage and minor personal injuries. Marson paid the claims and obtained releases prior to July 26, 1981. Thereafter Marson sought common law indemnity from respondents Ostella for all claims arising from the blasting.

Respondents brought a motion for summary judgment for reasons similar to those set forth in Johnson above. The trial court granted the motion for reasons similar to those in Johnson.

Appellants Johnson and Marson filed notices of appeal from the summary judgments entered by the respective trial courts. On March 31, 1982, prior to a hearing on the appeals, the Legislature passed Laws of 1982, ch. 100 (SB 4691) entitled: "AN ACT Relating to technical corrections in the law of comparative fault and contribution among tort

feasors". Section 1(3) amends RCW 4.22.040(3) and preserves the right of common law indemnity between active and passive tortfeasors in cases where a party is not entitled to contribution by virtue of RCW 4.22.920. Appellants Johnson and Marson notified the Court of Appeals, contending SB 4691 should be applied retroactively to give them a cause of action for indemnity. As a result, the Court of Appeals asked for supplemental briefs. Thereafter, the consolidated appeals were certified to this court.

Prior to the enactment of the 1981 Tort Reform Act this court recognized a common law right of indemnity between *active* and *passive* tortfeasors. *Rufener v. Scott,* 46 Wn.2d 240, 242, 280 P.2d 253 (1955). We did not, however, allow contribution among joint tortfeasors. *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 576 P.2d 388 (1978). In 1981 the Tort Reform Act abolished common law indemnity and substituted therefor the right of contribution. Laws of 1981, ch. 27, §§ 12, 15, codified as RCW 4.22-.040 and RCW 4.22.920.

In making the change, abolition of the common law right of indemnity was made applicable to *all cases in which trial on the underlying action had not taken place prior to July 26, 1981.* Thus, on the date the instant cases were pending on a motion for summary judgment, no right of indemnity existed. Moreover, RCW 4.22.920 provided there was *no right of contribution where settlement of the case had occurred prior to July 26, 1981.* Consequently, where in most cases the Tort Reform Act substituted a right of contribution for common law right of indemnity, appellants were left with neither right because they had settled their claims prior to July 26, 1981. This is internally inconsistent with the concept expressed earlier in the act (*i.e.,* that the right of contribution was to be *substituted* for the right of common law indemnity).

The foregoing inconsistency soon became evident. In 1982 the Legislature passed SB 4691 amending RCW 4.22-.040(3). It preserved the common law right of indemnity for all parties who were ineligible to claim contribution because

their cases had been settled prior to July 26, 1981.[1] The issue, then, is whether SB 4691, amending RCW 4.22.040 and .920 (the original Tort Reform Act) applies retroactively to give appellants a cause of action for common law indemnity.

Respondents emphasize that SB 4691 contains no express statement that it is to apply retroactively. Thus, they assert the statute is presumed to apply prospectively. *Haddenham v. State,* 87 Wn.2d 145, 550 P.2d 9 (1976). Further, respondents suggest the language of the original Tort Reform Act was unambiguous and thus the amendment contained in SB 4691 represents a substantive change in legislative intent. *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

On the other hand, appellants point to equally well founded rules of statutory construction. One rule indicates that if the amending legislation is clearly remedial and curative, it should be construed to apply retroactively even though not expressly stated. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972). Additionally, it is said, "If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act". 1A C. Sands, *Statutory Construction* § 22.31 (4th ed. 1972).

■ Respondents and appellants have relied, quite correctly, on standard rules of statutory construction yet the cited rules lead to conflicting results. It must be remembered, however, that these are not statements of law. Rather, they are rules in aid of construing legislation and an aid in the process of determining legislative intent.

---

[1]Laws of 1982, ch. 100, § 1(3):

"The common law right of indemnity . . . is abolished: PROVIDED, That the common law right of indemnity . . . is not abolished in those cases to which a right of contribution by virtue of RCW 4.22.920(2) does not apply."

Laws of 1982, ch. 100, § 2(2): "there is no right of contribution in favor of or against any party who has, prior to July 26, 1981, entered into a release, covenant not to sue . . . or similar agreement with the claimant."

There are other recognized aids as well, and we turn to them in this instance.

██ An examination of the Tort Reform Act reveals the language employed by the 1981 Legislature in RCW 4.22.040 and .920 appears unambiguous at first. Nevertheless, a review of the act itself as well as the act's historical background and subsequent legislative action discloses that the intended purpose was to simply substitute the right of contribution for the right of common law indemnity. Consequently, it is not logical to assume it was the Legislature's intent that one would be denied *both* the right of contribution and a common law right of indemnity.

This apparent internal inconsistency was the subject of comment by Senator Talmadge, a sponsor of the Tort Reform Act and chairman of the Senate Select Committee which initially studied the problem. In *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1 (1981), Senator Talmadge indicates the Select Committee had rejected the concept of common law indemnity for more equitable apportionment under the right of contribution. Ultimately, as he points out, the Tort Reform Act abolished the common law right of indemnity and in its place established the right of contribution. At page 17, footnote 70, the Senator observed that the committee intended the right of contribution to be *substituted* for the common law right of indemnity. In reference to the apparent internal inconsistency mentioned above, he commented that common law indemnity still applies in all claims in which the right of contribution provided by statute is not allowed. There appeared to have been no intent to abolish both rights of action as was done by the strange combination of RCW 4.22.040(3) and RCW 4.22.920. In discussing the subject of settlements achieved prior to July 26, 1981, the Senator opined that they were not to be affected by the retroactive application of contribution. Thus, if applied as he intended, there would have been no internal inconsistency.

As we have said before, however, one cannot rely on affidavits or comments of individual legislators to establish

legislative intent. What may have been the intent of an individual legislator may not have been the intent of the legislative body that passed the act. *Woodson v. State,* 95 Wn.2d 257, 623 P.2d 683 (1980). Nevertheless, the foregoing historical background is instructive as to the existence of a true internal inconsistency. It is also instructive as to what the Legislature subsequently intended. *See Snow's Mobile Homes,* at 291–92. Senator Talmadge and Senator Hemstad engaged in the following conversation at the time when SB 4691 was given its second reading.

> Senator Hemstad: "Senator Talmadge, based upon your explanation of Senate Bill 4691 am I correct in my understanding of it that the purpose of these technical corrections is to expressly conform the statute to that *which was intended at the time of the original enacting enactment during the 1981* legislative session?"
>
> Senator Talmadge: "Yes, Senator Hemstad, your understanding is exactly correct."

(Italics ours.) Senate Journal, 47th Legislature (1982), at 859.

In answer to another question by Senator Wilson about the technical corrections, Senator Talmadge commented:

> The issues that were raised in the bill are very technical in nature. . . . There is another question about the fit between the concept of 'comparative negligence' and concept of 'comparative fault;' *the fit between the concept of 'indemnity between joint tort–feasors' and 'contribution among joint tort–feasors.'*

(Italics ours.) Senate Journal, 47th Legislature (1982), at 860.

Further, concerning the intent of the 1982 Legislature, the 1982 Final Legislative Report at page 185 provides a brief description of SB 4691 that is wholly consistent with the view that the 1982 legislative act was intended to clarify the Legislature's original intent, as well as be curative and remedial. In relating the background of the problem created by the 1981 legislation it states:

> The act also repealed indemnity rights for parties who had entered into a settlement prior to the effective date,

but left such parties with no right of contribution; there is concern that this denies party defendants any ability to allocate financial and legal responsibility among themselves.

In discussing what action was taken by the 1982 Legislature the report recites:

The right to indemnity is established as to active/passive tortfeasors when a release has been signed for a claim arising prior to July 26, 1981.

Where a claim arose before July 26, 1981 and the parties have attempted to settle a case, the right to indemnity or contribution may now be discharged by a reasonableness hearing as provided by law.

Clearly SB 4691 sections 1(3) and 2(2) were adopted by the 1982 Legislature to clarify its original intent as to the apparent internal inconsistency in the Tort Reform Act. Considering the legislative history and the fact that the amendment came shortly after controversies began to arise about the act's internal inconsistency, we must consider the amendment as clarifying, remedial and curative in nature. Further, it should be construed to accomplish its purpose. *Carpenter v. Butler,* 32 Wn.2d 371, 379, 201 P.2d 704 (1949). *See also Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 558, 637 P.2d 652 (1981); 1A C. Sands, *Statutory Construction* § 22.31 (4th ed. 1972).

Based on the historical analysis and the subsequent legislative action we can only conclude SB 4691 is retroactive despite the absence of a provision for retroactivity. *Overton v. Economic Assistance Auth., supra.* Further, the technical corrections contravene no construction placed on the original statute by this court. *Carpenter v. Butler, supra.* In fact our determination is wholly consistent with *Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 715 n.1, 658 P.2d 1230 (1983) which, although dealing with RCW 4.22.060 of the Tort Reform Act, recognized that the amendments of the 1982 Legislature were corrective in nature.

Respondents contend that even if SB 4691 is declared curative, remedial and thus retroactive, it would interfere with their vested rights. Thus, it is said that SB 4691

should not be given retroactive effect in the instant case. We do not agree.

Respondents assert a vested right in their favorable judgment at the trial level. This is incorrect. The causes of action were not adjudicated by the judgment of dismissal entered by the trial courts. These being actions sounding in tort, which were on appeal, no one can be said to have had a vested right until the cases were finally resolved on appeal and a final judgment entered. *Hansen v. West Coast Wholesale Drug Co.*, 47 Wn.2d 825, 289 P.2d 718 (1955).

Additionally, respondents do not suggest that their rights under the Tort Reform Act may have become vested because of their having acted in reliance thereon. Finally, respondents had no vested right in the Tort Reform Act itself. No one has a vested right in any general rule of law or policy of legislation which gives an entitlement to insist that it remain unchanged for one's own benefit. *Citizens Against Mandatory Bussing v. Palmason*, 80 Wn.2d 445, 452, 495 P.2d 657, 50 A.L.R.3d 1076 (1972). *See State ex rel. Wash. State Sportsmen's Coun., Inc. v. Coe*, 49 Wn.2d 849, 852, 307 P.2d 279 (1957). Consequently, respondents' claim of unconstitutional interference with vested rights is not well taken.

In sum, we reverse the trial court and remand the causes for reconsideration in light of the retroactive application of SB 4691.

WILLIAMS, C.J., and ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.