**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Ernest M. FLEISCHER,**
**et al., Defendants.**

No. 93–2062–JWL.

United States District Court,
D. Kansas.

Aug. 15, 1994.

H. David Barr, Charles J. Williams, Gage & Tucker, Overland Park, KS, William L. Turner, Bernard J. Rhodes, R. Kent Sellers, Jeffrey M. Pfaff, Mike L. Racy, Jean Paul Bradshaw, II, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.–Prof. Liability Section, Robert H. Plotkin, Resolution Trust Corp., Professional Liability Section, Washington, DC, and Andrea J. Goetze, N.L.R.B., New Orleans, LA, for plaintiff.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, and Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Renana B. Abrams,

Robert P. Wray, Thomas H. Stahl, Jennifer P. Kyner, Armstrong, Teasdale, Schlafly & Davis, Kathleen A. Hardee, Hoskins, King, McGannon & Hahn, Kansas City, MO, John R. Toland, Toland & Thompson, Iola, KS, Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, Thomas E. Gleason Jr., Thomas E. Gleason, Chartered, Ottawa, KS, and Greer S. Lang, and Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, MO, for defendants.

Thomas R. Weigand, pro se.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a suit brought by plaintiff Resolution Trust Corporation ("RTC") alleging multiple causes of action against former directors and officers of Franklin Savings Association ("FSA"). The claims asserted by the RTC against the defendants include state law tort claims under negligence and breach of fiduciary duty theories.[1] The RTC does not allege any breach of the duty of loyalty, any willful or wanton or grossly negligent breach of the duty of care, any criminal violation under the Kansas Savings and Loan Code, or any improper personal benefit from any transaction.

In its 1993 session, the Kansas Legislature enacted into law a statutory provision regarding the personal liability of officers and directors of savings and loans. *See* K.S.A. § 17–5831. In its 1994 session, the Kansas Legislature considered and passed Senate Bill 762, which specified that K.S.A. § 17–5831 was to be retroactively applied to all actions not finally adjudicated prior to its 1993 enactment.

If this court were to apply the provisions of K.S.A. § 17–5831 retroactively to this action, it would have the effect of eliminating the RTC's accrued actions for negligence and breach of fiduciary duty against nearly every defendant. This raises the question of

whether the RTC had a vested property right under Kansas law in their accrued tort causes of action, such that the retroactive application of K.S.A. § 17–5831 would constitute an unconstitutional taking of property under the United States Constitution, and raises the further question of whether the retroactive application would be violative of the Kansas Constitution. Because the answers may be determinative of the cause now pending in this court, and this court finds no controlling precedent exists in decisions of the Kansas Supreme Court or Kansas Court of Appeals, we certify the following questions to the Kansas Supreme Court as authorized by K.S.A. § 60–3201 *et seq.*:

(1) Under Kansas law, does the holder of accrued tort actions for negligence and breach of fiduciary duty, which have not yet been reduced to judgment, have a vested property right in those causes of action?

(2) Is Senate Bill 762, which makes K.S.A. § 17–5831 retroactive, unconstitutional under the constitution of the State of Kansas when applied to claims which accrued prior to its enactment?

### II. Background

This case involves a suit brought by plaintiff RTC alleging various causes of action against former directors and officers of FSA. The claims asserted by the RTC against the defendants are various state law causes of action arising out of a series of transactions involving tax-exempt revenue bonds known as credit enhancement projects and alleged losses sustained through various broker-dealer subsidiaries of FSA. All of the RTC's state law claims are based on theories of simple negligence or negligent breach of fiduciary duty. The RTC does not allege any breach of the duty of loyalty, any willful or wanton or grossly negligent breach of the duty of care, any criminal violation of the Kansas savings and loan code, or any improper personal benefit from any transaction. All of the RTC's claims arise from actions taken by defendants prior to the time the RTC was appointed conservator on February 15, 1990.

---

1. The RTC also asserted claims for breach of implied contract and negligence per se, which were dismissed by the court on motion of defendants.

In its 1993 session, the Kansas Legislature enacted into law a statutory provision regarding the personal liability of officers and directors of savings and loan associations. The statute, K.S.A. § 17–5831, provides as follows:

**Personal liability of officers and directors, exceptions.** Except for persons who are executive officers, an officer or director of a savings and loan association, federal savings association or federal savings bank shall have no personal liability to the savings and loan association, federal savings association or federal savings bank or its members or stockholders for monetary damages for breach of duty as an officer or director, except that such liability shall not be eliminated for: (a) Any breach of the officer's or director's duty of loyalty to the association or bank, its members or stockholders; (b) acts or omissions which constitute willful or gross and wanton negligent breach of the officer's or director's duty of care; (c) acts in violation of K.S.A. 17–5412, 17–5811 and 17–5812 and amendments thereto; or (d) any transaction from which the officer or director derived an improper personal benefit. For purposes of this section, "executive officer" means the chairperson of the board, the president, each vice president, the cashier, the secretary and the treasurer of a savings and loan association, federal savings association or federal savings bank, unless such officer is excluded by resolution of the board of directors or by the bylaws of the savings and loan association, federal savings association or federal savings bank, and the officer does not actually participate in the policymaking functions of the savings and loan association, federal savings association or federal savings bank.

In its 1994 session, the Kansas Legislature considered and passed Senate Bill 762, which specified that K.S.A. § 17–5831 was applicable to all actions not finally adjudicated prior to its 1993 enactment. Senate Bill 762, which was signed by the governor on May 11, 1994, and became effective upon its publication in the Kansas Register on May 19, 1994, provides as follows:

Section 1. The provisions of K.S.A.1993 Supp. 9–1132, 17–2268 and 17–5831 and amendments thereto apply to an action brought against a director or officer of an insured depository institution, regardless of whether the action was filed before, on, or after May 20, 1993, unless the action was finally adjudicated before May 20, 1993. The provisions of this section shall not apply to executive officers as defined in K.S.A.1993 Supp. 9–1132, 17–2268 and 17–5831 and amendments thereto.

Section 2. If any provision of section 1 or K.S.A.1993 Supp. 9–1132, 17–2268 and 17–5831 and amendments thereto or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of such statutes which can be given effect without the invalid provision or application, and to this end the provisions of such statutes are declared to be severable.

Section 3. This act shall take effect and be in force from and after its publication in the Kansas register.

### III. Discussion

■ There is no question that at the time the RTC brought its present cause of action against defendants in this case, Kansas law provided valid causes of action against the defendants based upon the RTC's theories of negligence and negligent breach of fiduciary duty. In *Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443 (10th Cir.1992), the Tenth Circuit held that in states where an officer or director is liable for simple negligence, the FDIC may rely on state law to enable its action. Kansas law, prior to the enactment of K.S.A. § 17–5831, clearly established duties of care for directors and officers of savings and loans and allowed actions against such persons in simple negligence for breach of such duty. *See Federal Sav. & Loan Ins. Corp. v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985).

With the passage of K.S.A. § 17–5831, the Kansas Legislature moved to eliminate claims against savings and loan directors and officers, other than "executive officers" as defined in the statute, for simple negligence or negligent breach of fiduciary duty. With

the passage of Senate Bill 762, the legislature enacted this statute retroactively. If retroactive enactment of this statute is upheld, it would have the effect of eliminating the RTC's accrued negligence and negligent breach of fiduciary duty claims in this litigation. The RTC argues that such a retroactive application of K.S.A. § 17–5831 would be violative of its due process rights under the United States Constitution and would also violate Section 18 of the Bill of Rights of the Kansas Constitution.

A. Are accrued tort actions for negligence and negligent breach of fiduciary duty, that have not been reduced to judgment, "vested property rights" under Kansas law?

 The RTC contends that retroactive application of K.S.A. § 17–5831 would violate the Due Process Clause of the Fifth Amendment by stripping it of "vested property rights" it held in the accrued causes of action. When a court confronts general retroactive legislation, it generally begins by making a threshold determination of whether the statute affects a "remedy" or a "right." *See* Rotunda and Nowak, Treatise on Constitutional Law: Substance and Procedure, 2nd § 15.9 at p. 464 (1992). If the measure affects a remedy, the court typically reasons that no one can reasonably expect a remedy to remain immune from legislative controls, and, consequently, it will sustain the retroactive legislation. However, there is no rigid distinction between "rights" and "remedies." Modification of a remedy may affect due process. *Id.* Similarly, a mere determination that a statute affects a "right" does not automatically invalidate the legislation. Congress may legislate retroactively in ways that affect certain private property rights as long as a rational basis for the legislation exists. *See United States v. Sperry Corp.,* 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). However, when legislation retroactively affects what many courts have termed "vested rights," the constitutionality test is much stricter, and such retroactive legislation is nearly universally deemed to be violative of constitutional protections. *See Alpine Ridge Group v. Kemp,* 955 F.2d 1382 (9th Cir.1992), *rev'd on other grounds, Cisneros v. Alpine Ridge Group,* —— U.S. ——, 113 S.Ct. 1898,

123 L.Ed.2d 572 (1993); *Hammond v. United States,* 786 F.2d 8 (1st Cir.1986).

 Property interests are not created by the Constitution. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, in determining whether retroactive application of K.S.A. § 17–5831 would, indeed, be violative of the Due Process Clause of the Fifth Amendment, a crucial element in this court's constitutionality analysis becomes how the RTC's accrued tort claims are defined under the state law of Kansas.

There are a number of federal cases that hold that an accrued tort action is not a vested property right. *See Arbour v. Jenkins,* 903 F.2d 416 (6th Cir.1990) (the fact that a statute is retroactive does not make it unconstitutional because a legal claim affords no definite or enforceable property right until reduced to final judgment); *Sowell v. American Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir.1989) ("a legal claim affords no definite or enforceable property right until reduced to final judgment"); *In re Consol. U.S. Atmospheric Testing Litigation,* 820 F.2d 982, 988 (9th Cir.1987) (a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained); *Hammond v. United States,* 786 F.2d 8, 11 (1st Cir.1986) ("[b]ecause rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights of the plaintiff by enacting § 2212 and retroactively abolishing her cause of action in tort"). Each of these courts, applying the rational basis standard of due process review, upheld the constitutionality of statutes that retroactively abolished accrued causes of action in tort.

 Based merely on a reading of the plain language contained in the preceding opinions, it would appear that, as a general rule, an accrued tort action that had not yet been reduced to final judgment would not be considered a vested property right subject to heightened constitutional protection. How-

ever, this court believes such a conclusion cannot be reached relying solely on those cases for several reasons. In the first place, even though the cases did affect state law causes of action, none of the cases relied on state law in defining the accrued causes of action as property interests. This court believes that *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) mandates the use of state law in defining property interests. Secondly, none of the cases listed above involved the strict elimination of an accrued cause of action. Rather, they involved situations where Congress, through the passage of legislation, shifted remedies available to potential plaintiffs. State law causes of action against certain individuals were eliminated, but were replaced by a comprehensive recovery scheme against the federal government. If those courts had been looking at a situation in which state law causes of action were eliminated, with no other recovery scheme made available to plaintiffs, it is possible that greater deference would have been given to the property rights held by those individuals by virtue of their accrued state law causes of action.

Several state courts have dealt directly with the question of whether an individual has a vested property interest in an accrued tort action, and there is a split of authority on the question. *In Phillips v. Curiale,* 128 N.J. 608, 608 A.2d 895 (1992), the New Jersey Supreme Court dealt with a purportedly retroactive statute that had the effect of barring recovery by any New Jersey National Guard member against a fellow member on account of injury sustained in the line of duty. Prior to the passage of the statute, and at the time the plaintiff in the case had been injured, under the law of New Jersey a member of the New Jersey National Guard injured in the line of duty could sue fellow guard members for those injuries if they were attributable to the fellow guard members' negligence. The court first determined

that, in fact, the statute did not retroactively apply to plaintiff's claim. However, the court then went on to consider whether the retroactive application of the statute would either unconstitutionally interfere with "vested rights" or be "manifestly unjust." The court concluded that "inchoate tort claims have not been regarded as vested rights of sufficient status to withstand, in all circumstances, a clear legislative intent to apply retroactively the amendments to plaintiff's cause of action." The court concluded that retroactive amendment of the statute would constitute a valid exercise of the state's police power. Similarly, in *Johnson v. Continental West, Inc.,* 99 Wash.2d 555, 663 P.2d 482 (1983), the Supreme Court of Washington, in rejecting a litigant's claim of unconstitutional interference with vested rights, stated that "[t]hese being actions sounding in tort, which were on appeal, no one can be said to have had a vested right until the cases were finally resolved on appeal and a final judgment entered." *Id.* 663 P.2d at 486.

Other courts have reached the opposite conclusion. In *Greyhound Food Management, Inc. v. City of Dayton,* 653 F.Supp. 1207 (S.D.Ohio 1986) the district court, interpreting Ohio law, found that upon the occurrence of an injury, a person acquires a vested right in those causes of action arising out of the injury under the state law applicable at that time. *Id.* at 1216, 1219. In *Resolution Trust Corp. v. Wright,* No. 92–2026 (W.D.Okla. Nov. 22, 1993), the district court, interpreting Oklahoma law, found a statute passed by the Oklahoma legislature similar to K.S.A. § 17–5831, which retroactively eliminated RTC causes of action for simple negligence, to impair vested rights of the RTC and to be in violation of Article 5, Section 52 of the Oklahoma Constitution.[2]

■ This court has found no clear pronouncements under the law of Kansas regarding the property status, and consequently constitutional protection, that Kansas

---

2. Article 5, Section 52 of the Oklahoma Constitution provides:

The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state. After suit has been commenced on

any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any defense to such suit.

Kansas does not have the same provision in its constitution.

would place on an accrued tort action that had not yet been reduced to judgment. The RTC cites *Brown v. Goodyear Tire & Rubber Co.,* 3 Kan.App.2d 648, 653, 599 P.2d 1031 (1979); *Horton v. Fleming Co.,* 3 Kan.App.2d 121, 122, 590 P.2d 594 (1979) and *Grizzle v. Jacobberger,* 6 Kan.App.2d 42, 43–44, 626 P.2d 813 (1981) for the proposition that a cause of action vests at the time of accrual, and a new law that would reduce a plaintiff's recovery on an accrued claim cannot be applied retroactively. However, this court finds those cases inapposite. All involved substantive changes to statutory recovery schemes, with no legislative guidance on potential retroactive application. Thus, the focus in those cases was on the question of when the cause of action accrued and, if prior to the new law, whether to apply the statutes retroactively. In the present case, retroactivity has been specifically directed by the Kansas legislature. Moreover, the cases cited by the RTC do not involve alteration of common law schemes, and thus do not implicate Kansas law concerning whether vested rights exist in such circumstances.

B. Retroactive application of K.S.A. § 17–5831 under the Kansas Constitution

Although in many ways related to the vested property right analysis discussed above for Federal Constitutional analysis, the question of whether retroactive application of K.S.A. § 17–5831 violates provisions of the Kansas Constitution raises different issues which this court believes to be unsettled under Kansas law. Specifically, the court finds there to be a question of whether the retroactive application of K.S.A. § 17–5831 would violate Section 18 of the Bill of Rights of the Kansas Constitution.[3]

The Kansas Supreme Court has recognized that Section 18 of the Kansas Bill of Rights requires an adequate substitution remedy before the legislature can abolish a common-law remedy. *See Bair v. Peck,* 248 Kan. 824, 811 P.2d 1176 (1991). In *Bair,* the Kansas Supreme Court recognized that, under Kansas law, no one has a vested right in common-law

rules which would preclude substituting a viable statutory remedy for one available under common law. *See Bair,* 248 Kan. at 838, 811 P.2d 1176. In *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251 (1988), the court stated the general rule that "[t]he legislature can modify the common law so long as it provides an adequate substitute remedy for the right infringed or abolished." *Id.* at 350, 757 P.2d 251. In *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 789 P.2d 541 (1990), the court stated that "[d]ue process requires that the legislature substitute the viable statutory remedy of quid pro quo (this for that) to replace the loss of the right." *Id.* at 358, 789 P.2d 541.

The Kansas cases dealing with the adequate substitution remedy have dealt with situations in which the legislature has abrogated common law doctrines in favor of comprehensive statutory remedies. *See Bair v. Peck,* 248 Kan. 824, 811 P.2d 1176 (1991); *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 789 P.2d 541 (1990); *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251 (1988); *Rajala v. Doresky,* 233 Kan. 440, 661 P.2d 1251 (1983); *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974). However, the court believes the analysis also to be applicable to the present situation, where the legislature has abrogated common law causes of action that could have been asserted against directors and officers of savings and loan associations, in favor of the statutory remedy provided in K.S.A. § 17–5831. Additionally, the above cases all deal with prospective application of new statutory remedies. However, this court believes the relevant analysis to be equally applicable in the present case, for if K.S.A. § 17–5831 were found to fail to provide an adequate substitute remedy for the loss of a plaintiff's common law right to pursue simple negligence claims against directors and officers of savings and loan associations, any such constitutional infirmity would seem to

---

**3.** Section 18 of the Kansas Bill of Rights provides:

Justice without delay. All persons, for injuries suffered in person, reputation or property,

shall have remedy by due course of law, and justice administered without delay.

exist under both retrospective and prospective application of the statute.[4]

Defendants argue that K.S.A. § 17–5831 is an adequate substitute remedy for the displaced common law actions of negligence and negligent breach of fiduciary duty against directors and officers of savings and loan institutions. Defendants contend that, significantly, Senate Bill 762 and K.S.A. 17–5831 do not disturb the traditional common law causes of action against a broad range of savings and loan insiders, described by the acts as "executive officers," consisting of "the chairperson of the board, the president, each vice president, the cashier, the secretary and the treasurer," so long as they participate in policymaking for the institution. Defendants also point out that the new statute explicitly provides a civil cause of action against other directors and officers for any breach of the duty of loyalty, grossly negligent breach of the duty of care, criminal violations, and transactions resulting in an improper personal benefit. Thus, defendants assert that the new statute preserves plaintiff's ordinary negligence cause of action as against the institution's top management, and in turn provides a direct cause of action against all directors and officers for certain specified breaches. Defendants contend that K.S.A. 17–5831 is therefore a sufficient substitute remedy for the pre-existing common law remedy.

The RTC, on the other hand, contends that Senate Bill 762 destroys its common law rights and creates no substitute remedy whatsoever. The RTC argues that if K.S.A. § 17–5831 is given retroactive effect, it will have no claim or remedy for negligence or negligent breach of fiduciary duty against any board members other than the "chairperson" of the board. Its negligence and negligent breach of fiduciary duty claims against all other defendants would be eliminated with, the RTC argues, no substitute remedy at all. The RTC contends that all

that would remain after Senate Bill 762 (e.g., claims against directors based on gross negligence or criminal conduct or other claims against "executive officers") are rights that have always existed under Kansas law. Thus, the RTC argues that the statute abrogates substantial rights and gives it nothing in return.

Obviously, the RTC and the defendants have totally different views regarding the proper application of the adequate substitute remedy doctrine. Defendants look at the replacement of an entire bundle of common law rights by new statutory rights. The RTC, on the other hand, looks at individual rights it had under the common law and analyzes whether that right has been replaced by an adequate substitute remedy. This court sees potential problems under either analysis. Under defendants' analysis, the RTC's common law negligence and breach of fiduciary duty claims against certain defendants are completely eliminated without any substitute remedy being provided. This would seem to fly in the face of the Kansas authorities cited above which require an adequate substitute remedy for the abolition of a common law remedy. However, the RTC's analysis raises equally troubling questions. Must the legislature provide an adequate substitute remedy for every single common law right affected whenever it attempts to regulate by statute rights and remedies formerly covered under common law? The enactment of K.S.A. § 17–5831 is certainly arguably a reasoned and proper response by the Kansas Legislature to concerns in the savings and loan industry. However, under the RTC's interpretation, the statute could not even be applied prospectively. Interpretation of the adequate substitution remedy doctrine in this manner would be a severe restriction on the powers of the legislature to create laws.

■ This court has reviewed the Kansas authorities dealing with the adequate substi-

---

4. Indeed, it appears to this court that if it is determined that K.S.A. § 17–5831 fails to provide potential plaintiffs with an adequate substitute remedy for the abolition of simple negligence claims and negligent breach of fiduciary duty claims against directors and officers of savings and loan institutions, that under the relevant

Kansas authorities not only would K.S.A. § 17–5831 be unconstitutional if retroactively applied, but prospective application would be unconstitutional as well. This court seeks only a determination of the constitutionality of retroactive application of K.S.A. § 17–5831.

tute remedy doctrine. From our review, the court finds this area of Kansas law to be unsettled and unclear. As a matter of federalism, it should be the Kansas court that resolves such an important issue implicating public policy under state constitutional law. Accordingly, this court believes it appropriate that the question of whether K.S.A. § 17–5831 and Senate Bill 762 are unconstitutional under the Kansas Constitution be certified to the Supreme Court of Kansas.

*IV. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** the foregoing questions of law be certified to the Kansas Supreme Court.

**IT IS FURTHER ORDERED** that the clerk of this court forward to the Kansas Supreme Court a copy of this order, under official seal, and comply with any subsequent requests made by the Kansas Supreme Court for all or any portion of the record in this case.

**IT IS SO ORDERED.**