Don EDWARDS; Richard H. Lehman; Sala Burton; Howard Berman, Robert T. Matsui; Vic Fazio; County of Santa Clara; Lao Family Community, Inc.; Bach Viet Association, Inc.; and Teng Khang, on behalf of himself and others similarly situated, Plaintiffs-Appellees,

v.

Otis BOWEN, Secretary of United States Department of Health and Human Services; James Baker, as Secretary of the United States Department of Treasury; and Joseph Wright, as Acting Director of the Office of Management and Budget, Defendants-Appellants.

No. 85–2660, 85–2821.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1986.

Decided April 2, 1986.

Robert Rubin, San Francisco, Cal., for plaintiffs-appellees.

Nicholas Zeppos, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Before MERRILL, GOODWIN, and ALARCON, Circuit Judges.

MERRILL, Circuit Judge:

This expedited appeal involves a dispute over the amount appropriated by Congress for the Refugee Targeted Assistance Program in fiscal year 1985. We affirm the judgment for the plaintiffs.

Congress originally created the Refugee Targeted Assistance Program under Title III of the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102, 109, codified as amended at 8 U.S.C. §§ 1521–25 (1982).

The Program funds local job training and English language instruction in areas of the country significantly affected by the settlement of refugees. The plaintiffs are a beneficiary refugee, several refugee associations, local governments receiving funds under the Program, and Members of Congress representing districts that would benefit from the funds at issue. The defendants are various Executive Branch officials ("the government").

The statute in question is a Continuing Resolution passed by Congress in October 1984 to provide funding for the fiscal year ending on September 30, 1985. It states that the activities of the Program

> shall be continued at a rate for operations not in excess of the lower of the current rate or the rate authorized by H.R. 3729 as passed by the House of Representatives....

Pub.L. No. 98–473, § 101(k), 98 Stat. 1837, 1963 (1984)

The parties agree that "current rate" means the total of funds which were made available for the Program during fiscal 1984, the previous year. This meaning is settled. *In re CETA Appropriation under 1979 Continuing Resolution*, 58 Comp.Gen. 530, 533 (1979); Office of General Counsel, General Accounting Office, *Principles of Federal Appropriations Law* 7–6 (1982). The parties also agree that the fiscal 1984 funding was $77.5 million. There is no dispute over the fact that the rate authorized by H.R. 3729 is $50 million. It does, therefore, seem apparent that the lower of the two figures is $50 million and that this is the rate for operations provided by the Continuing Resolution.

The dispute arises over the fact that of the $77.5 million made available during the previous year there was a carry-over of unexpended funds amounting to $39 million. The parties agree that this $39 million carry-over remains available for disbursement in fiscal 1985, on top of whatever amount is provided by the Continuing Resolution.

Plaintiffs argue that the carry-over should be added to the $50 million provided by the Continuing Resolution—making a total sum of $89 million available for disbursement. We agree.

The government contends that the $39 million unspent carry-over must be deducted from the $77.5 million "current rate" to ascertain the number to be compared with the $50 million H.R. 3729 rate. When this is done, that number is reduced to $38.5 million and becomes the lower of the two figures specified in the Continuing Resolution. The $39 million carry-over added to this figure totals $77.5 million, which is the figure the government contends Congress has provided for fiscal 1985.

In our judgment, the language of the Continuing Resolution does not permit this construction. It does not say that the $50 million is to be compared with the "current rate less any unexpended carry-over from fiscal 1984." It says it is to be compared with the "current rate." The availability of the carry-over has nothing to do with the Continuing Resolution. It is based upon earlier Congressional action.

The government cites the "not in excess of" language to support its claim, relying on an earlier opinion by the Comptroller General. But the Comptroller General in this case agrees with the plaintiffs' and our interpretation of the Continuing Resolution. *In re Funding for Refugee and Entrant Targeted Assistance*, B–219061 (June 28, 1985); Letter to the Hon. Thomas P. O'Neill, Jr., B–216664, GAO/OGC–85–18 (September 26, 1985). The government also contends that the Continuing Resolution is a "stop-gap" measure which should be interpreted strictly in favor of the government. But this contention requires us to ignore the undisputed meaning of "current rate," which under the statute we cannot do. The government's contentions do inject ambiguity into otherwise unambiguous language. Resort to legislative history then becomes proper. *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 871 (9th Cir.1981).

The House Conference Report which accompanied the Continuing Resolution, H.R. Rep. No. 1159, 98th Cong., 2d Sess. 402 (1984), U.S.Code Cong. & Admin.News 1984, p. 3182, 130 Cong.Rec. H11854, H11966 (daily ed. Oct. 10, 1984), expressed concern over past delays in making funds available to states and localities and clearly demonstrates the legislative intent that any unspent carry-over shall be available to the affected localities in addition to the $50 million in new funds. The Report states:

It is the intent of the conferees that $50,000,000 will be available for the targeted assistance program in fiscal year 1985, and that the Department will expend new monies to fulfill the 1985 appropriations levels provided by this bill. The conferees * * * direct the Department not to reduce any State or local entity's allotment on the basis of 1984 funds carried over or previously committed.

This Report shows that Congress intended the Continuing Resolution to provide $50 million in new funds. That, together with the $39 million carry-over, makes a total of $89 million available. The government argues that if Congress had desired this result, it would have said simply "$50 million" in the text of the Resolution. Regretably, it did not do so. However, both the Resolution's language and its history indicate that Congress intended the result reached here.

Events in Congress subsequent to the Resolution's adoption confirm our conclusion. On October 21, 1985, the Senate unanimously adopted an amendment designed to force release of the disputed $11.5 million. 131 Cong.Rec. S13626, S13658–S13659 (daily ed. Oct. 21, 1985). A House-Senate Conference Committee later deleted the amendment because it felt that the present lawsuit had made it unnecessary. That Committee's Report stated:

The conferees are further agreed that these funds should be released immediately to the intended grantees. While the initial dispute over these funds may have been based on an honest disagreement over the interpretation of the 1985 continuing resolution, this is no longer the case. Two opinions of the Comptroller General and a decision by the U.S. District Court for the Northern District of California in *Edwards v. Heckler* [Margaret M. Heckler, the predecessor to defendant Secretary Bowen in this lawsuit] have affirmed the availability of the funds. Based on these findings, the conferees believe that the funds should be released to the intended recipients so that services can be provided to needy refugees and entrants.

H.R.Rep. No. 402, 99th Cong., 1st Sess. 24–25 (1985), 131 Cong.Rec. H10508, H10514 (daily ed. Nov. 21, 1985), accompanying Pub.L. No. 99–178, 99 Stat. 1102 (1985).

■ Both houses of Congress have adopted the Conference Report containing this paragraph. 131 Cong.Rec. H10913, H10944 (daily ed. Dec. 5, 1985); 131 Cong. Rec. S17000, S17005 (daily ed. Dec. 6, 1985). When it approved the Report, the House of Representatives knew of the language explicitly endorsing the district court's judgment in this case. *See* 131 Cong.Rec. H10943 (daily ed. Dec. 5, 1985) (statement of Rep. Pashayan). Obviously, the subsequent approval of a committee report cannot authoritatively define the intent of a previous Congress in passing a statute. However, these events certainly provide some evidence of Congress's earlier intent. *Bell v. New Jersey*, 461 U.S. 773, 784–85, 103 S.Ct. 2187, 2193–94, 76 L.Ed.2d 312 (1983); *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 595–96, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). They buttress our conclusion as to the meaning of the Resolution.

AFFIRMED.