88 P.3d 424 (2004)
In re Personal Restraint Petition Of Benjamin Scott JONES, Petitioner.
In re Personal Restraint Petition of Skylar Lee Walker, Petitioner.
Nos. 30232-2-II, 31067-8-II.
Court of Appeals of Washington, Division 2.
April 23, 2004.
As Amended July 20, 2004.
*425 Arthur David Curtis, Attorney at Law, Clark Co. Prosecuting Atty., Vancouver, WA, Jeremy Richard Randolph, Attorney at Law, Chehalis, WA, for Respondent.
Skylar Lee Walker, Benjamin Scott Jones, Aberdeen, WA, Pro Se Appellants.
MORGAN, J.
In unrelated personal restraint petitions that we have consolidated for purposes of this opinion only, Skylar Lee Walker and Benjamin Scott Jones claim that the trial court should not have counted their prior juvenile adjudications when computing the SRA[1] offender scores for their current adult offenses. We deny both petitions.
Walker was born on August 21, 1983. On November 8, 2001, he committed a third degree assault for which he was convicted and sentenced in adult court. He had previously been convicted and sentenced in juvenile court for second degree burglary committed on November 16, 1995; second degree burglary committed on December 10, 1995; residential burglary committed on April 12, 1998; custodial assault committed on June 24, 1999; custodial assault committed on July 28, 1999; custodial assault committed on December 27, 1999; custodial assault committed on April 5, 2000; custodial assault committed on June 22, 2000; and second degree malicious mischief committed on June 22, 2000. When the adult sentencing court computed his SRA offender score for the current third degree assault, it counted each of his nine prior juvenile adjudications as four points (one-half point each, rounded down to 4 points). After ruling that his standard range was 12+ to 16 months, it sentenced him to 16 months.
Jones was born on August 1, 1981. On December 28, 2002, he committed first degree theft and attempted to elude the police. For both of those offenses, he was convicted and sentenced in adult court. He had previously been convicted and sentenced in juvenile court for second degree assault committed on April 19, 1996; unlawful possession of a firearm committed on April 19, 1996; unlawful possession of a controlled substance committed on October 10, 1997; and unlawful possession of a firearm committed on October 10, 1997. He had previously been convicted and sentenced in adult court for five felonies the nature of which is not pertinent here. When the adult sentencing court computed his SRA offender score for the current first degree theft, it counted his four prior juvenile adjudications as two points (one-half point each), his five adult prior adult felonies as five points (one point each), and his current attempt to elude as one point, making a total score of eight. It similarly computed the offender score for his current attempt to elude. After ruling that his standard ranges were 33 to 43 months on the theft and 17 to 22 months on the attempt to elude, it imposed concurrent sentences of 36 months on *426 the first degree theft and 22 months on the attempt to elude.
Walker and Jones now seek post-conviction relief. Citing State v. Rodney Smith,[2] they argue that their prior juvenile convictions should not have been included in their SRA offender scores.[3]
The SRA was enacted in 1981.[4] Through 2004, it has been amended by 176 session laws,[5] some of which embody numerous changes. Indeed, "[i]t has become so astoundingly and needlessly complex that it cannot possibly be used both quickly and accurately."[6] The amendments pertinent here were enacted in 1997,[7] 2000,[8] and 2002.[9]
Before 1997, the SRA had provided that the offender score for a current adult offense (other than a sex offense,[10] serious violent offense,[11] or Class A felony committed while 15 or older[12]) did not include a prior juvenile adjudication for an offense committed before age 15, or after age 15 if the offender committed the current adult offense while 23 or older.[13] In 1997, the SRA was amended to provide that the offender score would include all prior juvenile adjudications.[14] According to the legislature's express declaration of intent, the 1997 amendment took effect on July 1, 1997.[15]
In State v. Rodney Smith,[16] the Washington Supreme Court addressed four consolidated but otherwise unrelated cases: State v. Rodney Smith, State v. Devaughn Dorsey, State v. Michael Lowe, and State v. George Hendricks. Smith was born on September 30, 1968;[17] committed his current adult offense *427 on June 19, 1998;[18] and had five prior juvenile felony adjudications for offenses committed after age 15.[19] Dorsey was born on December 16, 1973;[20] committed his current adult offenses on May 10, 1999;[21] and had four prior juvenile felony adjudications for offenses committed after age 15.[22] Lowe was born on March 19, 1980;[23] committed his current adult offenses on August 2, 1998, and October 24, 1998; and had four prior juvenile felony adjudications for offenses committed in 1994, plus three more for offenses committed in 1997.[24] Hendricks was born on January 11, 1973;[25] committed his current adult offense on April 29, 1999;[26] and had prior juvenile felony adjudications for three offenses committed in 1986, another committed in 1987, a third committed on January 29, 1988, and two others committed in 1989 or later.[27] Relying on the 1997 amendment, each trial court counted each defendant's prior juvenile adjudications in his current offender score.
On appeal to the Supreme Court, each defendant argued that his prior juvenile adjudications had "washed out" before July 1, 1997; thus, he said, the trial court should not have included them in his offender score. Accordingly, the questions on appeal were (1) whether a prior juvenile adjudication for an offense committed after age 15 should be counted when computing the offender score for an offense committed after July 1, 1997; and (2) whether a prior juvenile adjudication for an offense committed before age 15 should be counted when computing the offender score for an offense committed after July 1, 1997.
Conflating the two questions, the Rodney Smith court answered both in the negative. It reasoned that under the law in effect before July 1, 1997, a prior juvenile adjudication "washed out" when the offender turned 23; that the 1997 amendment applied prospectively but not retroactively; and that to apply the 1997 amendment to the defendant's 1998 and 1999 offenses was to apply it retroactively. Thus, Smith's and Dorsey's prior juvenile adjudications for offenses committed after age 15 had "washed out" in 1991 and 1996, respectively; had not been "revived" when the 1997 amendment took effect on July 1, 1997; and should not have been included in the offender scores for their current adult offenses.[28] Additionally, Lowe's *428 and Hendricks's adjudications for pre-age-15 offenseswhich had never counted in the first placehad "washed out," had not been "revived," and should not have been counted.
Even before the Supreme Court decided Rodney Smith, the 2000 legislature amended the SRA to provide as follows:

NEW SECTION. Sec. 1. This act is intended to cure any ambiguity that might have led to the Washington supreme court's decision in State v. Cruz[, 139 Wash.2d 186, 985 P.2d 384 (1999)], Cause no. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. This act is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.

NEW SECTION. Sec. 2. ... Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.[[29]]
The Rodney Smith court held that this 2000 amendment did not alter the effects of the 1997 amendment.[30] The court said that if the legislature had intended the amendment to apply retroactively, "it should have stated that intention directly and unambiguously."[31] This result was consistent with the federal view that a later legislature cannot dispositively declare the intent of an earlier legislature,[32] although the later legislature's declaration is a factor to be considered.[33]
As the United States Supreme Court has said many times:
Subsequent legislation which declares the intent of an earlier law is not, of course, conclusive in determining what the previous Congress meant. But the later law is entitled to weight when it comes to the problem of construction.[[34]]
*429 About six months after Rodney Smith, the legislature again amended the SRA. Its 2002 amendment stated:

NEW SECTION. Sec. 1. The legislature considers the majority opinions in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), and State v. Smith, Cause No. 70683-2 (September 6, 2001), to be wrongly decided, since neither properly interpreted legislative intent. When the legislature enacted the sentencing reform act, chapter 9.94A RCW, and each time the legislature has amended the act, the legislature intended that an offender's criminal history and offender score be determined using the statutory provisions that were in effect on the day the current offense was committed.
Although certain prior convictions previously were not counted in the offender score or included in the criminal history pursuant to former versions of RCW 9.94A.525, or RCW 9.94A.030, those prior convictions need not be "revived" because they were never vacated. As noted in the minority opinions in Cruz and Smith, such application of the law does not involve *430 retroactive application or violate ex post facto prohibitions. Additionally, the Washington state supreme court has repeatedly held in the past that the provisions of the sentencing reform act act upon and punish only current conduct; the sentencing reform act does not act upon or alter the punishment for prior convictions. See In re Personal Restraint Petition of Williams, 111 Wash.2d 353, 759 P.2d 436, (1988). The legislature has never intended to create in an offender a vested right with respect to whether a prior conviction is excluded when calculating an offender score or with respect to how a prior conviction is counted in the offender score for a current offense.[[35]]
....
Sec. 3. RCW 9.94A.525 and 2001 c 264 s 5 are each amended to read as follows:
....
(18) The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. Accordingly, prior convictions that were not counted in the offender score or included in criminal history under repealed or previous versions of the sentencing reform act shall be included in criminal history and shall count in the offender score if the current version of the sentencing reform act requires including or counting those convictions.[[36]]
Section 3(18) was to "apply only to current offenses committed on or after the effective date of this act,"[37] that date being June 13, 2002.
In State v. Varga,[38] the Washington Supreme Court considered the effect of these 2002 amendments. It held "that the 2002 SRA amendments properly and unambiguously require that sentencing courts include defendants' previously `washed out' prior convictions when calculating defendants' offender scores at sentencing for crimes committed on or after the amendments' effective date."[39] Since June 13, 2002, then, whether a prior juvenile adjudication counts toward an offender score depends on the statutes in effect on the date of the current offense.
Since Rodney Smith, the Court of Appeals has decided three cases pertinent here. In State v. Perry,[40] Division Three held that a prior juvenile adjudication for an offense committed after age 15 did not "wash out" of the offender score for a current adult offense apparently committed in 1999[41] because the offender had not turned 23 before July 1, 1997. In State v. Jesse Smith,[42] Division One held that a prior juvenile adjudication for an offense committed before age 15 "washes out" of the offender score for a current adult offense committed in 2000, where the offender had turned 15 on January 19, 1997 (i.e., before July 1, 1997). In State v. Dean,[43] Division Two held that a prior juvenile adjudication for an offense committed after age 15 "washes out" of the offender score for a current adult offense committed in 2000, where the offender turned 23 in 1992 (i.e., before July 1, 1997).[44]
*431 Combining the 1997 amendments and the 2002 amendments with Rodney Smith, Varga, Dean, Perry, and Jesse Smith, we conclude that whether a prior juvenile adjudication is properly included in the SRA offender score for a current adult offense depends primarily on the date of the current adult offense. In some cases, however, it will also depend on the nature of the prior juvenile offense, on the defendant's age when he or she committed the prior juvenile offense, and on the defendant's age on July 1, 1997. Thus, we summarize as follows:
1. If the current adult offense occurred on or after June 13, 2002, the prior juvenile adjudication counts.[45]
2. If the current adult offense occurred before July 1, 1997, and the prior juvenile offense is not a sex offense,[46] serious violent offense,[47] or Class A felony committed while 15 or older,[48] the prior juvenile adjudication does not count.[49]
3. If the current adult offense occurred on or after July 1, 1997 but before June 13, 2002, and the prior juvenile offense is not a sex offense,[50] serious violent offense,[51] or Class A felony committed while 15 or older:[52]
a. The prior juvenile adjudication does not count if the defendant committed the underlying juvenile offense before age 15, provided that he or she attained age 15 before July 1, 1997.[53]
b. The prior juvenile adjudication does not count if the defendant committed the underlying juvenile offense while age 15 or older, provided that he or she attained age 23 before July 1, 1997.[54]
c. Otherwise, the prior juvenile adjudication counts.[55]
Returning to the facts here, we first address whether Walker's trial court should have included his prior juvenile adjudications in the offender score for his current offense of third degree assault. He committed that current offense on November 8, 2001, so we are under Paragraph 3 of the foregoing summary. He committed three of his prior juvenile offenses before age 15, and five after turning age 15. He did not turn 15 until August 21, 1998, and he will not turn 23 until August 21, 2006. Because his pre-age-15 convictions had not "washed out" on July 1, 1997, they were properly included in his offender score; and because his post-age-15 convictions have not "washed out" even now, they were properly included in his offender score. Accordingly, Walker's trial court did not err by including his prior juvenile adjudications in the offender score for the current *432 third degree assault that he committed on November 8, 2001.
We next address whether Jones's trial court should have included his prior juvenile adjudications in the offender scores for his current offenses of first degree theft and attempting to elude the police. He committed those current offenses on December 28, 2002. That was after the effective date of the 2002 amendment (June 13, 2002). Under Paragraph 1 of the foregoing summary, Jones's trial court did not err by including his prior juvenile adjudications in the offender scores for the current first degree theft and current attempt to elude that he committed on December 28, 2002.
Both petitions are hereby dismissed.
We concur: SEINFELD and HUNT, JJ.
NOTES
[1] The Sentencing Reform Act of 1981 is commonly known as "the SRA," and we will refer to it as such.
[2] 144 Wash.2d 665, 30 P.3d 1245 (2001).
[3] Based on recent decisions from the Washington Supreme Court, we do not question the ability of Walker and Jones to bring their petitions. See In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 867-68, 50 P.3d 618 (2002) (petitioner "must establish (1) he or she is being unlawfully restrained, (2) due to a `fundamental defect which inherently results in a complete miscarriage of justice'") (quoting In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996)); Goodwin, 146 Wash.2d at 868, 50 P.3d 618 ("sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice"); In re Pers. Restraint of Johnson, 131 Wash.2d 558, 568, 933 P.2d 1019 (1997) (petitioner unlawfully restrained when sentence based on "incorrect calculation of his offender score"); In re Pers. Restraint of Bowman, 109 Wash.App. 869, 872, 38 P.3d 1017 (2001) ("defendant sentenced in violation of our sentencing laws may raise the error for the first time on a personal restraint petition"), review denied, 146 Wash.2d 1001, 56 P.3d 566 (2002).
[4] Laws of 1981, ch. 137, §§ 1-42.
[5] We collected the first 175 of those session laws in State v. Jones, 118 Wash.App. 199, 211-12 n. 32, 76 P.3d 258 (2003). The most recent one is Laws of 2004, ch. 38, §§ 9-10.
[6] Jones, 118 Wash.App. at 211, 76 P.3d 258.
[7] Laws of 1997, ch. 338, §§ 5(2), 2(12).
[8] Laws of 2000, ch. 26, §§ 1,2.
[9] Laws of 2002, ch. 107, §§ 3(18), 4, 2(13).
[10] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b); see also Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a sex offense.
[11] Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a serious violent offense.
[12] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a Class A felony committed while 15 or older.
[13] Laws of 1984, ch. 209, § 19(1) (offender score "[i]nclude[s] juvenile felony convictions if the offender was 15 or older at the time the [juvenile] offense was committed and the offender was less than 23 at the time the [current adult] offense ... was committed"); Laws of 1981 ch. 137, § 3(6)(b) (pre-age-15 juvenile offenses not part of criminal history); Laws of 1984, ch. 209, § 3(8)(b) (same).
[14] Laws of 1997, ch. 338, §§ 5(2), 2(12).
[15] Laws of 1997, ch. 338, § 75.
[16] 144 Wash.2d 665, 30 P.3d 1245.
[17] Smith Clerk's Papers (CP) at 5 (Statement of Defendant on Plea of Guilty). In this opinion, we show some dates that were not included in the Rodney Smith court's opinion. We have obtained those dates in part by examining the Supreme Court's archived files, and in part from our own prior opinion in Rodney Smith. We refer to the Supreme Court's files as "Smith CP," "Dorsey CP," and so on.
[18] Smith CP at 11 (Statement of Defendant on Plea of Guilty).
[19] Smith, 144 Wash.2d at 669, 30 P.3d 1245. The Supreme Court's file does not show the dates on which Smith committed his prior juvenile offenses, but it does show that his earliest sentencing took place on January 27, 1984, about four months after he turned 15. We infer that he committed each of his priors after turning 15.
[20] Dorsey CP at 83 (Statement of Juvenile on Plea of Guilty); Dorsey CP at 70 (Defense Brief Regarding Scoring of Juvenile Adjudications).
[21] Dorsey CP at 9, 142. The Supreme Court's file shows that Dorsey committed one of his priors on June 20, 1989. Dorsey CP at 80. The file does not show when he committed his other priors, but it does show that he was not sentenced for them until 1991. It seems reasonable to infer that he committed each of his priors after turning 15.
[22] Smith, 144 Wash.2d at 669, 30 P.3d 1245.
[23] State v. Hendricks, 103 Wash.App. 728, 732 n. 5, 14 P.3d 811 (2000), rev'd by Smith, 144 Wash.2d 665, 30 P.3d 1245; Lowe CP at 27, 30, 34 (Statement of Juvenile on Plea of Guilty); Lowe CP at 38, 44, 50 (Order of Disposition).
[24] Hendricks, 103 Wash.App. at 732, 14 P.3d 811; Lowe CP at 64-65 (Judgment and Sentence).
[25] Hendricks, 103 Wash.App. at 732 n. 1, 14 P.3d 811; Hendricks CP at 14, 15, 16, 32 (Disposition Order); Hendricks CP at 17, 34, 42, 51, 60 (Judgment and Sentence).
[26] Hendricks CP at 60 (Judgment and Sentence).
[27] Hendricks CP at 61 (Judgment and Sentence); see also Hendricks, 103 Wash.App. at 732, 14 P.3d 811.
[28] Smith, 144 Wash.2d at 674-75, 30 P.3d 1245 ("[W]e hold the 1997 amendment cannot be applied retroactively. Accordingly, we find the sentencing courts erred by reviving appellants' previously washed out juvenile adjudications and calculating them into their offender scores."); accord State v. Dean, 113 Wash.App. 691, 699, 54 P.3d 243 (2002), review denied, 149 Wash.2d 1009, 67 P.3d 1097 (2003). By not disturbing the use of Lowe's and Hendricks's prior juvenile adjudications for offenses committed after 15, the Smith court seems also to have suggested that a prior juvenile adjudication for an offense committed after age 15 does not wash out unless the offender turned 23 before July 1, 1997. Division Three later held to that effect in State v. Perry, 110 Wash.App. 554, 559, 42 P.3d 436 (2002).
[29] Laws of 2000, ch. 26, §§ 1, 2.
[30] Smith, 144 Wash.2d at 672-73, 30 P.3d 1245.
[31] 144 Wash.2d at 672, 30 P.3d 1245.
[32] O'Gilvie v. United States, 519 U.S. 79, 90, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996) ("the view of a later Congress cannot control the interpretation of an earlier enacted statute"); Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 63 L.Ed.2d 36 (1980) ("the views of subsequent Congresses cannot override the unmistakable intent of the enacting one"); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("The views of members of a later Congress ... are entitled to little if any weight."); Edwards v. Bowen, 785 F.2d 1440, 1442 (9th Cir.1986) ("[T]he subsequent approval of a committee report cannot authoritatively define the intent of a previous Congress in passing a statute."); Derby v. Bowen, 636 F.Supp. 803, 806 n. 6 (E.D.Wash. 1986) ("As a general rule, a post facto statement of congressional intent regarding previously-enacted legislation is not necessarily definitive.").
[33] Seatrain, 444 U.S. at 596, 100 S.Ct. 800 (views of subsequent legislatures "are entitled to significant weight"); Fed. Hous. Admin. v. Darlington, Inc., 358 U.S. 84, 90, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958) ("Subsequent legislation which declares the intent of an earlier law ... is entitled to weight when it comes to the problem of construction."); Edwards, 785 F.2d at 1442 (views of a later Congress "certainly provide some evidence of Congress's earlier intent").
[34] Darlington, 358 U.S. at 90, 79 S.Ct. 141; accord O'Gilvie, 519 U.S. at 90, 117 S.Ct. 452; Seatrain, 444 U.S. at 596, 100 S.Ct. 800; Teamsters, 431 U.S. at 354, 97 S.Ct. 1843 n. 39; NLRB v. Bell Aerospace Co. of Textron, Inc., 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); Higgins v. Smith, 308 U.S. 473, 479-80, 60 S.Ct. 355, 84 L.Ed. 406 (1940); United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L.Ed. 358 (1923); cf. South Carolina v. Regan, 465 U.S. 367, 378, n. 17, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984); Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). The membership of the later legislature is not the same as the membership of the earlier one, and even assuming some overlap, a random group of members from the earlier body cannot dispositively declare the earlier body's intent. Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("We have eschewed reliance on the passing comments of one Member, Weinberger v. Rossi, 456 U.S. 25, 35, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982), and casual statements from the floor debates.") (citing United States v. O'Brien, 391 U.S. 367, 385, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)); Consumer Prod. Safety Comm'n, 447 U.S. at 108, 100 S.Ct. 2051 (same); City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 642 n. 1, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (Rehnquist, J., dissenting) ("Statements or comments of individual Senators or Representatives on the floor of either House are not to be given great, let alone controlling, weight in ascertaining the intent of Congress as a whole.") (citing Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474, 41 S.Ct. 172, 65 L.Ed. 349 (1921)); Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 464, 57 S.Ct. 556, 81 L.Ed. 736 (1937); McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 493-94, 51 S.Ct. 510, 75 L.Ed. 1183 (1931); Doe v. Chao, 306 F.3d 170, 178 n. 2 (4th Cir. 2002) ("It is counterintuitive, however, to believe that the purpose of a later Congress comprised of different members and addressing different problems can be imputed back in time to the Congress that enacted the Privacy Act."), aff'd, ___ U.S. ___, 124 S.Ct. 1204, 157 L.Ed.2d 1122, 2004 WL 330043 (U.S. Feb. 24, 2004) (citing Sigmon Coal Co. v. Apfel, 226 F.3d 291, 308 n. 7 (4th Cir.2000), aff'd sub nom. Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). Accord In re Marriage of Kovacs, 121 Wash.2d 795, 807, 854 P.2d 629 (1993) ("the statements of individual lawmakers and others before the Senate Judiciary Committee cannot be used to conclusively establish the intent of the Legislature as a whole"); In re F.D. Processing, Inc., 119 Wash.2d 452, 461, 832 P.2d 1303 (1992) ("the comments of a single legislator are generally considered inadequate to establish legislative intent"); Wilmot v. Kaiser Alum. & Chem. Corp., 118 Wash.2d 46, 64, 821 P.2d 18 (1991) ("testimony before a legislative committee is given little weight"); City of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469, 117 Wash.2d 655, 677, 818 P.2d 1076 (1991) (it is "well settled that the Legislature's intent in passing a particular bill cannot be shown by the affidavit of a legislator"); Woodson v. State, 95 Wash.2d 257, 264, 623 P.2d 683 (1980) ("Legislative intent in passing a statute cannot be shown by depositions and affidavits of individual state legislators"). The United States Supreme Court's view is in accord with some, but arguably not all, Washington cases. Accord: Johnson v. Morris, 87 Wash.2d 922, 926, 557 P.2d 1299 (1976) ("Petitioner cites no authority for the proposition that the legislature is empowered to retroactively "clarify" an existing statute, when that clarification contravenes the construction placed upon that statute by this court. Such a proposition is disturbing in that it would effectively be giving license to the legislature to overrule this court, raising separation of powers problems."); Longview Co. v. Lynn., 6 Wash.2d 507, 520, 108 P.2d 365 (1940) ("subsequent act, evidently passed to aid in the interpretation of a prior act, should be given consideration") (quoting Whiting v. City of Seattle, 144 Wash. 668, 673, 258 P. 824 (1927)); Lynn, 6 Wash.2d at 521, 108 P.2d 365 ("subsequent legislation may be considered, at least to some extent, in interpreting prior laws"). Arguably contra: Anderson v. City of Seattle, 78 Wash.2d 201, 203, 471 P.2d 87 (1970) ("Courts are not at liberty to speculate on legislative intent when the legislature itself@ has subsequently placed its own construction on prior enactments.") (citing Carpenter v. Butler, 32 Wash.2d 371, 377, 201 P.2d 704 (1949)); Cowiche Growers, Inc. v. Bates, 10 Wash.2d 585, 604, 117 P.2d 624 (1941); and State ex rel. Oregon R.R. & Navigation Co. v. Clausen, 63 Wash. 535, 541, 116 P. 7 (1911)). See also the concurrence in Anderson v. City of Seattle, in which two justices stated:

An authentic interpretation by a subsequent session of the legislature is entitled to great weight. But subsequent legislative interpretation, like the initial legislation itself, normally may be given authoritative effect only prospectively. See J. Sutherland, 2 Statutory Construction § 3004 (3d ed. 1943).... In seeking the intent of the legislature, the judicial branch of government must ultimately be guided by the language used by those members of the legislature who passed the measure and not by an expression by a session, of different composition which addressed the same subject nine years later. See E. Freund, Legislative Regulation 178 (1932).
78 Wash.2d at 205, 471 P.2d 87 (Finley, J., concurring) (emphasis added).
[35] Laws of 2002, ch. 107, § 1.
[36] Laws of 2002, ch. 107, § 3(18), presently codified as RCW 9.94A.525(18).
[37] Laws of 2002, ch. 107, § 4.
[38] 151 Wash.2d 179, 86 P.3d 139 (2004).
[39] Varga, 86 P.3d at 141.
[40] 110 Wash.App. 554, 42 P.3d 436 (2002); accord State v. Cunningham, 116 Wash.App. 219, 225, 65 P.3d 325 (2003).
[41] Although the opinion shows that the defendant pled guilty in November 1999, it does not show the date of his current offense.
[42] 118 Wash.App. 288, 75 P.3d 986 (2003).
[43] 113 Wash.App. 691, 54 P.3d 243.
[44] The Dean court also said that a prior juvenile adjudication for an offense apparently committed before age 15 "washes out" of the offender score for a current adult offense committed in 2000, where the offender turned 15 before July 1, 1997. That statement, however, was dictum. Dean's birth date was May 27, 1969, and according to the record in his case, he committed his earliest juvenile offense after turning 15 (i.e., on June 16, 1984). Dean Court of Appeals spindle (Judgment and Sentence).
[45] Laws of 2002, ch. 107, §§ 3(18), 2(13), now codified as RCW 9.94A.525.
[46] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b); see also Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a sex offense.
[47] Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a serious violent offense.
[48] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a Class A felony committed while 15 or older.
[49] Laws of 1981, ch. 137, § 3(6)(b); see also Laws of 1984, ch. 209, §§ 19(1), 8(b).
[50] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b); see also Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a sex offense.
[51] Laws of 1995, ch. 101, §§ 1(4), 2(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a serious violent offense.
[52] Laws of 1990, ch. 3, §§ 706(2), 706(4), 602(12)(b). Nothing in this opinion considers whether an SRA offender score should include a prior juvenile adjudication for a Class A felony committed after turning age 15.
[53] Smith, 144 Wash.2d 665, 30 P.3d 1245; Smith, 118 Wash.App. 288, 75 P.3d 986; Dean, 113 Wash.App. 691, 54 P.3d 243.
[54] Smith, 144 Wash.2d 665, 30 P.3d 1245.
[55] Smith, 144 Wash.2d 665, 30 P.3d 1245; Smith, 118 Wash.App. 288, 75 P.3d 986; Cunningham, 116 Wash.App. at 225, 65 P.3d 325; Dean, 113 Wash.App. 691, 54 P.3d 243; Perry, 110 Wash.App. 554, 42 P.3d 436.