138 P.3d 168 (2006)
133 Wash.App. 855
STATE of Washington, Respondent,
v.
Steven O'Neal WADE, Appellant.
No. 22904-8-II.
Court of Appeals of Washington, Division 2.
July 5, 2006.
*170 Eric J. Nielsen, Eric Broman, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Michelle L. Shaffer, Cowlitz Co. Pros. Attorney Office, Kelso, WA, for Respondent.
QUINN-BRINTNALL, C.J.
¶ 1 Steven Wade was convicted of multiple offenses and was appointed counsel for appeal. Counsel filed an Anders[1] brief requesting that he be allowed to withdraw because there were no arguable issues to appeal. We conducted our own review of the record, agreed with counsel's assessment, affirmed Wade's convictions, and permitted Wade's counsel to withdraw. Wade's judgment and sentence became final in 2000.
¶ 2 In 2003, Wade found a ministerial error in his judgment and sentence  the document did not specify the precise term of his community placement. This error was corrected.
¶ 3 Wade now maintains that because his appellate counsel erroneously filed an Anders brief, he was denied the right to assistance of counsel in his direct appeal. Therefore, according to Wade, he is entitled to a new direct appeal without the limits of collateral review. We disagree. We hold that, when the appellate court and defense counsel complied with Anders on direct review, RCW 10.73.090 and .100 apply and limit the issues that may be raised in a collateral attack filed more than one year after the judgment and sentence became final. Because Wade raises no meritorious issues allowed under those statutes, we again affirm.

FACTS
¶ 4 In July 1997, Wade and two female accomplices unlawfully entered Ben and Jennifer Dobbe's home and demanded money the women claimed they were owed for their services at a bachelor party. At the time of the break-in, the Dobbes and Christopher and Nicolette Wakefield were in the home. Wade displayed a gun and asked where the bachelor was. When Ben said he did not know, Wade hit Ben in the head with the gun. Wade then asked where the money was. Wade again hit Ben in the head and shoulder with the gun when Ben replied, "What money?" 1 Report of Proceedings at 54. Wade pointed the gun at Jennifer, Christopher, and Ben, in that order, and demanded money and jewelry from each. Wade and the women fled but were apprehended after a high-speed police chase during which Wade threw the gun from the car.
¶ 5 A jury found Wade guilty of the first degree robberies of Ben, Jennifer, and Christopher (counts I, II, and III, respectively), first degree burglary (count IV), and the second degree assault of Ben (count V). However, the court dismissed the firearm enhancements and the unlawful possession of a firearm count, finding the evidence insufficient *171 to prove that the gun was operable at the time of the crime.
¶ 6 The court calculated Wade's offender score at 13, including four points for two 1989 juvenile adjudications. The court imposed exceptional sentences on counts I, II, and III, but ran all counts concurrently. The exceptional sentences were based on Wade's uncounted misdemeanor convictions and his offender score of 13, which exceeded the high end of the standard sentencing range and resulted in Wade going unpunished for two of his robbery convictions. The court considered each justification sufficient to impose the exceptional sentences.
¶ 7 Wade appealed and was appointed counsel. Wade's counsel filed an Anders brief asserting that there were no arguable issues to appeal and requesting that he be permitted to withdraw. Counsel briefed the procedural and factual history of the case, with citations to the record, and encouraged this court to review the sufficiency of the evidence supporting Wade's convictions. Wade was informed of counsel's request to withdraw and he filed a pro se supplemental brief raising six assignments of error.
¶ 8 After an independent review of the record, a court commissioner affirmed Wade's convictions and sentences. The commissioner addressed the issues counsel and Wade raised and granted counsel's motion to withdraw. We denied Wade's motion to modify the commissioner's ruling. The Washington Supreme Court denied Wade's petition for review. State v. Wade, 140 Wash.2d 1011, 999 P.2d 1261 (2000). Wade's convictions became final when the mandate was issued on April 12, 2000. See RCW 10.73.090(3)(b).
¶ 9 In 2003, Wade filed a CrR 7.8 motion in superior court. Wade maintained that under State v. Broadaway, 133 Wash.2d 118, 135-36, 942 P.2d 363 (1997), his judgment and sentence was facially invalid because it did not set a precise term of community placement. The superior court denied Wade's motion as untimely, but we reversed. State v. Wade, No. 31133-0-II, 2005 Wash.App. LEXIS 127, 125 Wash.App. 1016 (Jan. 19, 2005). We ordered the superior court to set Wade's community placement and to amend the judgment and sentence accordingly.
¶ 10 In January 2005, Wade filed a motion to recall the mandate. Wade maintained that in light of the community placement issue, the court commissioner had erred in the initial appeal in concluding that there were no arguable issues to appeal. Wade asserted that because of this error, he was entitled to a new direct appeal with appointed counsel. Without addressing the merits of Wade's argument, we granted the motion to recall the mandate, appointed counsel, and ordered briefing on this issue and other potential assignments of error.

ANALYSIS
¶ 11 Once a defendant has exhausted all direct appeal remedies, his judgment and sentence becomes final and his right to relief narrows. Even claims that may have resulted in a favorable ruling if raised on direct appeal must usually be rejected in deference to the strong societal need for finality in criminal judgments. Wade acknowledges the necessary balance courts must strike between providing relief and requiring timely objections, but he maintains that the flaws in his direct appeal and our decision to recall the mandate wiped his slate clean and require us to grant him a fresh direct review of his trial and sentencing. We disagree.

WADE'S INITIAL APPEAL AND ASSISTANCE OF COUNSEL CLAIM
¶ 12 Although a defendant has a constitutional right to effective assistance of counsel in his first appeal, he has no right to counsel for a frivolous appeal. Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); State v. Hairston, 133 Wash.2d 534, 537 n. 2, 946 P.2d 397 (1997). In Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Court set forth the following "prophylactic framework"[2] for an appellate counsel to follow when he concludes that an appeal would be frivolous:

*172 [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal.
Because the Anders procedure is prophylactic in nature, states may craft different procedures that sufficiently protect the defendant's right to appellate counsel. Smith v. Robbins, 528 U.S. 259, 276, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); McCoy v. Court of Appeals of Wis., Dist. 1, 486 U.S. 429, 442-44, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988) (upholding Wisconsin procedure requiring Anders brief to discuss why each potential issue raised lacks merit). Washington follows the Anders procedure. State v. Jackson, 87 Wash.2d 562, 566, 554 P.2d 1347 (1976); see also RAP 18.3(a) (appointed criminal appellate counsel may withdraw only with the court's permission).
¶ 13 In Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the Court struck down a procedure allowing counsel to withdraw before the court had determined whether counsel's evaluation of the case was accurate, and, in addition, allowed a court to decide the appeal without counsel even if the court found arguable issues. The Court concluded that allowing a court to decide a nonfrivolous appeal without counsel was particularly significant because "once a court determines that the trial record supports arguable claims, there is no basis for the [Anders] exception and ... the criminal appellant is entitled to representation." Penson, 488 U.S. at 84, 109 S.Ct. 346. The Court explained that "the denial of counsel in [such cases leaves a] petitioner completely without representation during the appellate court's actual decisional process.... [T]he `[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.'" Penson, 488 U.S. at 88, 109 S.Ct. 346 (fourth alteration in original) (quoting Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
¶ 14 In State v. Nichols, 136 Wash.2d 859, 968 P.2d 411 (1998) (per curiam), counsel filed an Anders brief, but Division One discovered one nonfrivolous issue. The issue was the same as in Wade's judgment and sentence, namely, the sentencing court failed to set the period of community placement. Division One affirmed Nichols's conviction and permitted counsel to withdraw, but it remanded to the superior court only to correct the sentencing error it identified. The Washington Supreme Court reversed. The court cited Penson and held that once an appellate court identifies a nonfrivolous issue, it "must appoint counsel to pursue the appeal and direct that counsel to prepare an advocate's brief before deciding the merits." Nichols, 136 Wash.2d at 861, 968 P.2d 411 (quoting McCoy, 486 U.S. at 444, 108 S.Ct. 1895).
¶ 15 Wade maintains that, under Nichols, he is entitled to a new direct appeal because this court erroneously accepted counsel's Anders brief and permitted counsel to withdraw. However, Wade's position differs critically from Penson and Nichols in that the nonfrivolous issue was not identified until after his counsel was permitted to withdraw and his judgment and sentence became final. Thus, it is Robbins, 528 U.S. 259, 120 S.Ct. 746, that controls our decision here, not Penson or Nichols.
¶ 16 In Robbins, appellate counsel concluded that an appeal would be frivolous and filed a brief complying with California's version of Anders. After its own examination of the record, the appellate court agreed with counsel's assessment of the case and affirmed Robbins's convictions. After Robbins exhausted his state post-conviction remedies, he filed a petition for a writ of habeas corpus in federal district court, raising several claims of trial error. The district court concluded that there were at least two arguable assignments of error and, as such, counsel's brief amounted to deficient performance. *173 The court presumed prejudice and ruled that Robbins was entitled to a new direct appeal. The Ninth Circuit Court of Appeals affirmed.
¶ 17 The United States Supreme Court reversed. The Court first held that the California procedure adequately protected the defendant's right to appellate counsel. Robbins, 528 U.S. at 278-83, 120 S.Ct. 746.[3] The Court then held that where the claim is that appellate counsel was ineffective for not filing a merits brief, the defendant must show that (1) counsel failed to recognize a nonfrivolous issue in processing the appeal as frivolous; (2) a reasonably competent counsel would have recognized the issue as nonfrivolous; and (3) a reasonable probability exists that the defendant would have prevailed in the appeal had counsel filed a merits brief on the nonfrivolous issue. Robbins, 528 U.S. at 285, 120 S.Ct. 746 (citing Strickland, 466 U.S. at 687-91, 694, 104 S.Ct. 2052).
¶ 18 The Court then discussed and distinguished Penson:
The defendant in Penson faced a denial of counsel because ... not only was an invalid state procedure followed, but that procedure was clearly invalid insofar as it denied the defendant his right to appellate counsel .... [W]hen, as in Penson, there has been a complete denial of counsel, we understandably presume the [appellate proceeding was not reliable].
But where, as here, the defendant has received appellate counsel who has complied with a valid state procedure for determining whether the defendant's appeal is frivolous, and the State has not at any time left the defendant without counsel on appeal, there is no reason to presume that the defendant has been prejudiced.... [C]ounsel followed a procedure that is constitutional under Anders and our other precedents in this area, and Robbins therefore received all the procedural protection that the Constitution requires. We thus presume that the result of the proceedings on appeal is reliable, and we require Robbins to prove the presumption incorrect in his particular case.
Robbins, 528 U.S. at 286-87, 120 S.Ct. 746 (citations omitted).
¶ 19 Under Robbins, Wade was not denied his right to counsel on direct appeal and we will not presume prejudice. Appointed counsel and this court followed the Anders procedure  counsel was permitted to withdraw only after counsel and this court reviewed the trial record, counsel and Wade each filed briefing, we reviewed those briefs, and we affirmed the convictions. The failure of this court and counsel to notice a ministerial error in the judgment and sentence[4] did not vitiate the procedural safeguards that were followed or render the appeal otherwise unreliable. See Marley v. Dep't of Labor & Indus., 125 Wash.2d 533, 543, 886 P.2d 189 (1994) ("[T]he power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law.") (quoting Dike v. Dike, 75 Wash.2d 1, 8, 448 P.2d 490 (1968)); State v. Adams, 91 Wash.2d 86, 91, 586 P.2d 1168 (1978) ("A defendant is not entitled to perfect counsel, to error-free representation.... Lawyers make mistakes.") (quoting FINER, INEFFECTIVE ASSISTANCE OF COUNSEL, 58 Cornell L.Rev. 1077, 1080 (1973)). Simply put, Wade "received all the procedural protection that the Constitution requires." Robbins, 528 U.S. at 287, 120 S.Ct. 746. If Wade is to obtain relief, he must do so through a claim *174 of ineffective assistance of appellate counsel.[5] Having so concluded, we must now address our decision to recall the mandate.

THE ORDER RECALLING THE MANDATE
¶ 20 Wade's motion to recall the mandate, and his renewed briefing here, were filed more than one year after Wade's judgment and sentence became final. As such, they are collateral attacks on his judgment and sentence. See RCW 10.73.090(2) (collateral attack includes any form of post-conviction relief other than a direct appeal). Wade maintains that by recalling the mandate, we resuscitated a previously final direct appeal and our review is direct not collateral. If Wade is correct, then he may raise issues before this court that he could not raise through collateral attack. See, e.g., RCW 10.73.100 (listing the permissible grounds for a collateral attack brought more than one year after the conviction and sentence becomes final); State v. Evans, 154 Wash.2d 438, 444, 114 P.3d 627 (new constitutional holdings apply retroactively to all cases pending on direct review or not yet final; holdings apply to final cases only if they require the observance of procedures implicit in the concept of ordered liberty), cert. denied, ___ U.S. ___, 126 S.Ct. 560, 163 L.Ed.2d 472 (2005). For the reasons that follow, we rescind the order recalling the mandate.
¶ 21 This court has authority to recall a mandate only to correct an inadvertent mistake, to modify a decision obtained by the fraud of a party or counsel, or to determine if the trial court has complied with our earlier decision in the same case. RAP 12.9(a)-(b). A motion to recall the mandate must be made within a reasonable time. RAP 12.9(c); Shumway v. Payne, 136 Wash.2d 383, 393, 964 P.2d 349 (1998) (1,000-day delay not reasonable). We may not recall a mandate for the purpose of reexamining the case on its merits. Shumway, 136 Wash.2d at 393, 964 P.2d 349; Kosten v. Fleming, 17 Wash.2d 500, 505, 136 P.2d 449 (1943) ("[A]n appellate court is without power to recall a mandate regularly issued without inadvertence, fraud, prematurity, or misapprehension, and ... it will not recall the mandate for the purpose of re-examining the cause on the merits, for the purpose of granting supplemental relief.") (quoting 5 C.J.S. 1560, § 1996). Improperly recalling a mandate "deprive[s] the courts of that stability which is necessary in the administration of justice." Reeploeg v. Jensen, 81 Wash.2d 541, 546, 503 P.2d 99 (1972) (quoting Kosten, 17 Wash.2d at 505, 136 P.2d 449), cert. denied, 414 U.S. 839, 94 S.Ct. 91, 38 L.Ed.2d 75 (1973).
¶ 22 Here, Wade maintains that recalling the mandate was appropriate to review claims that appellate counsel was ineffective for not briefing several issues in his direct appeal. What Wade now asks us to do is to allow further briefing and to reexamine the merits of his trial and initial appeal several years after the mandate issued and his judgment and sentence had become final. This court lacks the authority to recall the mandate on this basis. See In re Pers. Restraint of Woods, 154 Wash.2d 400, 410, 114 P.3d 607 (2005) (where defendant sought to recall the mandate and obtain a new direct appeal because he was denied his right to a sufficient trial record for his initial appeal, the appropriate remedy was not to recall the mandate, but to apply "the more lenient standard of review applicable to direct appeal to the new issues Woods discovered and raised following" perfection of the record). Thus, we rescind the order recalling mandate and review Wade's challenge as a personal restraint petition under the law applicable for collateral review.

COLLATERAL REVIEW
¶ 23 A defendant may obtain relief in a collateral attack on a judgment and sentence filed more than one year after finality only on the following grounds: (1) the judgment *175 and sentence is invalid on its face; (2) the judgment and sentence was rendered by a court lacking competent jurisdiction; (3) newly discovered evidence; (4) the statute that the defendant was convicted of violating is unconstitutional; (5) the conviction is barred by double jeopardy; (6) the evidence was insufficient to support the conviction; (7) the sentence imposed was in excess of the court's jurisdiction; or (8) there has been a significant change in the law that is material to the conviction. RCW 10.73.090(1), .100. This exclusive list is constitutional and mandatory, striking a balance between the interests in error-free trials and appeals and the interest in the finality of judgments. Shumway, 136 Wash.2d at 399, 964 P.2d 349; In re Pers. Restraint of Taylor, 105 Wash.2d 683, 686, 717 P.2d 755 (1986); In re Pers. Restraint of Hews, 99 Wash.2d 80, 86, 660 P.2d 263 (1983).
¶ 24 For good reason, a claim of ineffective assistance of trial or appellate counsel does not fall under the permissible grounds for collateral review more than one year after finality. Such a basis would circumvent the legislature's limiting exceptions and allow a defendant to seek relief on almost any ground. An issue not permitted under RCW 10.73.090(1) and .100 could nearly always be couched in terms of counsel's ineffectiveness for not raising the issue at trial or on direct appeal. As such, when more than one year after finality, a defendant maintains that appellate counsel was ineffective for filing an Anders brief and not raising certain issues in a merits brief, he may obtain relief on only those grounds set forth in RCW 10.73.090(1) and .100. We now address Wade's assignments of error.

MERGER
¶ 25 Wade maintains that his convictions for the first degree robbery and second degree assault of Ben Dobbe violate double jeopardy. See RCW 10.73.100(3). According to Wade, the second degree assault conviction should be vacated because, under State v. Freeman, 153 Wash.2d 765, 108 P.3d 753 (2005), the assault merged with the robbery. The State agrees with Wade. We disagree.
¶ 26 Although the constitutional guaranty against double jeopardy protects against multiple punishments for the same offense, the legislature has the power to define criminal conduct and to assign punishment to it. State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995). Therefore, where a defendant's act implicates multiple criminal statutes, a court weighing a double jeopardy challenge must determine if the legislature intended the charged crimes to constitute the same offense. Freeman, 153 Wash.2d at 771, 108 P.3d 753. The merger doctrine is one tool for determining legislative intent. Freeman, 153 Wash.2d at 772, 108 P.3d 753.
[T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).
Freeman, 153 Wash.2d at 777-78, 108 P.3d 753 (alteration in original) (quoting State v. Vladovic, 99 Wash.2d 413, 420-21, 662 P.2d 853 (1983)). The doctrine is not conclusive, for the legislature may explicitly or implicitly express its intent that crimes be treated separately even if they otherwise merge. Freeman, 153 Wash.2d at 778, 108 P.3d 753.
¶ 27 In Freeman, 153 Wash.2d 765, 108 P.3d 753, the court addressed this state's robbery statutes. Robbery elevates from second degree to first degree if, in the commission of the robbery or in the immediate flight therefrom, the defendant inflicts bodily injury, which is an assault. RCW 9A.56.190; former RCW 9A.56.200(1)(c) (1975); RCW 9A.56.210; State v. Aumick, 126 Wash.2d 422, 426 n. 12, 894 P.2d 1325 (1995); see also RCW 9A.36.011; former RCW 9A.36.021.031 (1997); RCW 9A.36.041. The Freeman court concluded that the legislature intended to punish separately both a robbery elevated to first degree by a first degree assault, and the assault itself; therefore, both convictions do not violate double jeopardy. 153 Wash.2d at 779-80, 108 P.3d 753. As to robbery elevated to first degree by a second degree *176 assault, the Freeman court held that "a case by case approach is required to determine whether first degree robbery and second degree assault are the same for double jeopardy purposes." 153 Wash.2d at 780, 108 P.3d 753. The court concluded that generally, the assault will merge with the robbery unless the assault has an independent purpose or effect. Freeman, 153 Wash.2d at 778-80, 108 P.3d 753.
¶ 28 Here, Wade's second degree assault conviction did not merge with the first degree robbery conviction. The assault conviction was based on Wade's multiple acts of clubbing Ben with the gun when Ben responded that he did not know where the bachelor was or where the women's money was. See former RCW 9A.36.021. Wade's robbery conviction occurred when, after he had already robbed the Wakefields, he pointed the gun at Ben, thereby committing another assault, and demanded Ben's money and jewelry. While this second assault may have merged with the robbery, it was not the basis for the second degree assault conviction. The assault conviction was based on acts designed to obtain information. As such, it had a purpose independent of the later robbery of Ben's money and jewelry. Wade's convictions for the second degree assault and first degree robbery of Ben do not violate double jeopardy.

SUFFICIENCY OF THE EVIDENCE
¶ 29 Wade maintains that the evidence was insufficient to support his conviction for the second degree assault of Ben. See RCW 10.73.100(4). This claim was addressed in the commissioner's decision affirming Wade's convictions on direct review. A collateral attack may not renew an issue raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. In re Pers. Restraint of Davis, 152 Wash.2d 647, 671, 101 P.3d 1 (2004). The interests of justice are served by reexamining an issue if there was an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application. Davis, 152 Wash.2d at 671 n. 15, 101 P.3d 1. This threshold has not been met here.
¶ 30 Nonetheless, we briefly address this issue. The State had to prove that Wade intentionally assaulted Ben with a deadly weapon. Former RCW 9A.36.021(1)(c). The jury instructions defined "deadly weapon" as "any firearm, whether loaded or unloaded, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." Clerk's Papers at 132. Wade asserts that because the trial court found the evidence insufficient to establish that the gun was operable at the time of the assault, the evidence was insufficient to find that the gun was a firearm. Wade is incorrect.
¶ 31 Operability is not required for a gun to be a "firearm." RCW 9.41.010(1) defines "firearm" as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." We have previously held that "[a]n unloaded or even inoperable firearm is still a firearm under RCW 9.41.010(1)." State v. Berrier, 110 Wash.App. 639, 645, 41 P.3d 1198 (2002). Thus, Wade's jury was properly instructed that they could find the inoperable gun was a firearm and a deadly weapon for purposes of supporting the second degree assault conviction. The evidence was sufficient to support Wade's conviction for the second degree assault of Ben.

EXCEPTIONAL SENTENCES
¶ 32 Wade maintains that his exceptional sentences should be reversed under Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the sentences were based on judicial fact-finding. But Blakely does not apply to cases, like Wade's, that were final when Blakely was issued. Evans, 154 Wash.2d at 448-49, 114 P.3d 627.

SAME CRIMINAL CONDUCT
¶ 33 Wade also maintains that the sentencing court erred in concluding that count I did not involve the same criminal conduct as counts IV and V. We have previously addressed and rejected this issue on collateral review, noting that the issue was time barred under RCW 10.73.090(1) and .100. *177 See Wade, 2005 Wash.App. LEXIS 127, at *4, 125 Wash.App. 1016, 2005 WL 103110, at *2.[6] We do not address issues previously heard and determined on collateral review. RCW 10.73.140.

OFFENDER SCORE
¶ 34 Wade committed his current offenses on July 6, 1997, when he was 24 years old. Wade's offender score included four points for two prior juvenile adjudications: A 1989 Oregon adjudication for second degree robbery, committed when he was 15, and a 1989 Oregon adjudication for second degree assault, committed when he was 15. Wade maintains that the juvenile adjudications should not have been included in his offender score and resentencing is therefore required. Wade may raise this issue because it implicates the facial validity of his judgment and sentence. In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 865-67, 50 P.3d 618 (2002).
¶ 35 Wade is correct that his offender score was erroneously calculated. Prior juvenile adjudications do not count in an offender score if (1) the defendant turned 23 before July 1, 1997; (2) his current adult offenses occurred on or after July 1, 1997, but before June 13, 2002; (3) the juvenile adjudications are not a sex offense, serious violent offense, or Class A felony; and (4) the defendant committed the underlying juvenile offense while age 15 or older. In re Pers. Restraint of Jones, 121 Wash.App. 859, 871, 88 P.3d 424 (2004). Wade's juvenile adjudications meet these requirements. Nonetheless, resentencing is unnecessary under the applicable pre-Blakely law.
¶ 36 Wade's offender score without the juvenile adjudications is nine, the upper limit of the standard sentencing range guideline. Wade's standard range sentences on counts IV and V are not affected by the change in offender score. As to counts I, II, and III, exceptional sentences were imposed for two independent reasons: Wade's offender score of 13 and Wade's uncounted misdemeanor convictions. While the first reason is erroneous when the juvenile adjudications are removed, the second reason remains valid. Resentencing is therefore not required.
¶ 37 Having rescinded the order recalling the mandate and having considered Wade's new assignments of error under the law applicable for collateral review, we again affirm Wade's convictions and sentencing.
We concur: HOUGHTON and VAN DEREN, JJ.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).
[3] As discussed in Robbins, 528 U.S. at 265-66, 120 S.Ct. 746, the California procedure differs from the Anders procedure in that counsel does not raise potential legal issues, explicitly describe the appeal as frivolous, or request withdrawal. Instead, counsel expresses his availability to brief any issues on which the court might desire briefing. If the appellate court, after its review of the record, also finds the appeal to be frivolous, it may affirm. If, however, the court finds a nonfrivolous issue, it orders briefing on that issue.
[4] A "ministerial" error involves the failure to perform an act "the law prescribes and defines... with such precision and certainty as to leave nothing to the exercise of discretion or judgment." State v. Bepple, 85 Wash.2d 378, 380, 535 P.2d 813 (1975). The sentencing court set Wade's community placement term "for the period of time provided by law," Clerk's Papers at 164, when it should have simply set the term at one year as required by former RCW 9.94A.120(9)(a) (1997). This is a ministerial error.
[5] We, like the Court in Robbins, are presented with the situation where the nonfrivolous issue was identified on collateral review. Penson and Nichols were presented with the situation where the nonfrivolous issue was identified during the initial direct appeal. We, like the Court in Robbins, do not address the situation where the nonfrivolous issue is identified after the initial direct appeal but before the conviction and sentence becomes final. Robbins, 528 U.S. at 288 n. 16, 120 S.Ct. 746.
[6] Under the mixed petition rule, a collateral attack with multiple issues must be dismissed if it is filed under the one-year time limit of RCW 10.73.090, and it raises even one issue that is time barred. In re Pers. Restraint of Hankerson, 149 Wash.2d 695, 697, 72 P.3d 703 (2003). Because Wade raises the same criminal conduct issue, his collateral attack is mixed. However, recognizing the unique procedural posture of this case, we do not dismiss the collateral attack in its entirety.