IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34634-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KARION H. THOMAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court convicted the minor, Karion Thomas, of second degree assault. We affirm the conviction.

FACTS

On the evening of December 11, 2015, 16-year-old Karion Thomas visited the home of his friend Ruben Lizarraga. Ruben's father, Joseph Lizarraga, and stepmother, Erica Kauffman, left Ruben and Thomas home alone for several hours. When the couple returned home around 10:30 p.m., they discovered juveniles partying and consuming alcohol.

Joseph Lizarraga confronted his son Ruben, and the two engaged in a physical fight inside the home. The fight continued into the backyard. After Ruben hit his father several times, Joseph Lizarraga hit Ruben and knocked him to the ground.

As Ruben Lizarraga lay on the ground, Karion Thomas argued with Joseph Lizarraga and sought to fight the father. Thomas wrapped an arm around Joseph's neck, pressed against his throat, and constricted his breathing. Another juvenile, Christopher Darion Simon pulled Thomas off Joseph Lizarraga.

Erica Kauffman called 911. All juveniles attending the party, including Ruben Lizarraga and Karion Thomas, fled the scene before police arrived.

PROCEDURE

The State of Washington, in juvenile court, charged Karion Thomas, under RCW 9A.36.021(1)(g), with one count of second degree assault of Joseph Lizarraga by strangulation or by suffocation. The case proceeded to a bench trial.

During trial, Joseph Lizarraga testified regarding the arm around his neck:

> [The State:] And where was his arm pressed against?
> [Mr. Lizarraga:] My throat. I didn't have enough time to put my chin down . . . he was squeezing and . . . if there wasn't [sic] for Darion to grab ahold of [Mr. Thomas], I would have passed out. I literally would have passed out.
>
> . . . .
>
> [The State:] Were you able to breathe when [Mr. Thomas] had his arm around your throat?
> [Mr. Lizarraga:] Somewhat? I was losing . . . I mean I was winded, so. But when I was released, I was able to catch—I mean, I was able to gasp for air. I mean it wasn't like, I mean, I was going to pass out . . . but he had a—he had a good choke hold. Let's just put it that way.
> [The State:] If he'd have kept that choke hold on you—
> [Mr. Lizarraga:] I would have definitely passed out. If there wasn't [sic] for Darion [Simon] to grab [Mr. Thomas], I would have been done for.
> [The State:] And about how long did you struggle to get [Mr. Thomas] off of you? . . . [T]he best you can estimate?

2

[Mr. Lizarraga:] Hmm, a couple seconds. I don't know. Maybe 10-15 seconds? Maybe a little bit longer. I don't know. I couldn't tell you. Everything happened so fast.

[The State:] And during that time were you unable to breath?

[Mr. Lizarraga:] I was struggling.

[The State:] Did you feel that your breathing was constricted?

[Mr. Lizarraga:] Oh yes. Like I said, I mean, if there wasn't for Darion, I would have been—I would have wind up passing out.

. . . .

[The State:] How did you feel after [Mr. Thomas] . . . ?

[Mr. Lizarraga:] Weak.

. . . .

[Mr. Lizarraga:]. . . . My heart was pounding. Trying to gasp for air. I was—I was winded.

[The State:] Did you feel dizzy at all?

[Mr. Lizarraga:] Not that I recall, no.

Report of Proceedings (RP) at 26-30.

Joseph Lizarraga further testified at trial that he did not see the arm around his neck, but that he knew the arm belonged to Karion Thomas. He testified that he spoke to a police officer that night and, on the next day, he gave a written statement. On cross-examination, defense counsel asked Lizarraga if he told the officer that night about Karion choking him, and Lizarraga replied in the affirmative.

Ruben Lizarraga testified that after his father knocked him to the ground outside, he did not see any activity. Ruben testified he did not see Karion Thomas attack his father.

Darion Simon testified during trial that Karion Thomas remained in the house while Joseph and Ruben Lizarraga fought outside. Simon testified that Thomas exited the home immediately on the ending of the father-son struggle. According to Simon, he

3

restrained Thomas because an angry Thomas wanted to fight Joseph Lizarraga after Joseph hurt Ruben.

Erica Kauffman testified at trial that she did not see Joseph and Ruben Lazarraga leave the house or fight outdoors. The trial court, through Erica Kauffman's testimony and despite Karion Thomas' hearsay and confrontation clause objection, admitted as an exhibit Kauffman's 911 call. Kauffman testified she was upset, frantic, and frightened when calling. During the call, Kauffman exclaimed: "My son's friends are trying to beat my husband up." She yelled to the teenagers: "Get away from my husband now." Kauffman asked the dispatcher to "please hurry." Ex. 3. Erica Kauffman testified that she saw Karion Thomas, but did not observe him touch her husband.

In Karion Thomas' case-in-chief, defense counsel called the police officer who responded to the scene on the night in question. The officer testified that he spoke with Joseph Lizarraga and Erica Kauffman, and, to his recollection, neither mentioned Thomas fighting or choking anyone.

The State called Joseph Lizarraga as a rebuttal witness. Over defense objections of hearsay and improper rebuttal, the trial court allowed Lizarraga to testify regarding the written statement he proffered to law enforcement the day after the incident. Lizarraga testified he wrote: "[Mr.] Thomas grabbed me and choked me, hold me [sic] and started choking me and another boy, [Mr. Simon] had grabbed [Mr. Thomas] to get him off of me." RP at 69.

4

The trial court found Karion Thomas guilty of second degree assault. At sentencing, the State moved to admit the predisposition report, and defense counsel did not object. The trial court sentenced Thomas to 52-65 weeks in the Juvenile Rehabilitation Administration based on an offender score of 2.5.

## LAW AND ANALYSIS

In this appeal, Karion Thomas' counsel filed an *Anders* brief. Counsel suggested several possible trial court errors and requested that this court review the entire record to determine if any errors occurred. Thomas' counsel also filed a motion to withdraw. We have independently reviewed the record and considered appellant's counsel's identifications of possible error. We find no error. We nonetheless analyze the potential errors identified by counsel.

In *Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), the nation's high Court established a "prophylactic framework" for appellate counsel to follow when she concludes that an appeal is frivolous:

> [I]f counsel finds [her] case to be wholly frivolous, after a conscientious examination of it, [s]he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished [to] the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal . . . .

*State v. Wade*, 133 Wn. App. 855, 864, 138 P.3d 168, 177 (2006).

Because of the preventative nature of the *Anders* procedure, states may craft

5

different procedures that sufficiently protect the defendant's right to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 276, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). Washington follows the *Anders* procedure. *State v. Jackson*, 87 Wn.2d 562, 566, 554 P.2d 1347 (1976); RAP 18.3(a).

Appellate defense counsel identified four potential issues for this appeal. Karion Thomas might contend that the State lacked sufficient evidence for the trial court to find him guilty of second degree assault, when Joseph Lizarraga never testified to a complete obstruction of his ability to breathe. When a defendant challenges the sufficiency of the evidence, this court asks whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We find sufficient evidence to convict because the crime does not demand complete obstruction.

The controlling statute, RCW 9A.36.021 declares:

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree. .
> . . . .
> (g) Assaults another by *strangulation* or suffocation.

(Emphasis added.) In turn, RCW 9A.04.110(26) defines "strangulation" as:

> "Strangulation" means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe.

6

The latter statute reads that the State need not prove the accused obstructed the victim's blood flow or ability to breathe as long as the accused compressed the victim's neck with an intent to obstruct either the blood flow or ability to breathe.

*State v. Rodriquez*, 187 Wn. App. 922, 930-36, 352 P.3d 200 (2015), *review denied*, 184 Wn.2d 1011, 360 P.3d 817 (2015), confirms our reading of RCW 9A.04.110(26). In *Rodriquez*, this court upheld a conviction for second degree assault by strangulation against a sufficiency of the evidence challenge. This court concluded that the meaning of "obstruct" in the strangulation statute does not require a complete obstruction, but rather the statute applies equally to complete and partial obstructions of either a victim's ability to breathe or to experience blood flow. The evidence against Karion Thomas showed a compression of the neck and partial obstruction.

Appellate counsel next identifies the possible argument that the trial court erred when admitting the 911 call of Erica Kauffman over hearsay and confrontation clause objections by defense counsel. We find no error in the admission of the call.

We first review state evidence rules. Under ER 801(c):

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Numerous exceptions qualify the hearsay rule. Under ER 803(a):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (2) *Excited Utterance*. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

7

Erica Kauffman testified she was frantic when she called emergency dispatch. Her report to the 911 dispatch confirmed her fright. Therefore, the call qualified as an excited utterance.

The excited utterance of Erica Kauffman did not violate the confrontation clause. In *State v. Reed*, 168 Wn. App. 553, 562-71, 278 P.3d 203 (2012), this court upheld the admission of two 911 calls over confrontation clause challenges. This court noted that the confrontation clause bars the admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. Statements are nontestimonial when made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

Erica Kauffman placed the 911 call in order to meet an ongoing emergency. The trial afforded an opportunity for Karion Thomas to cross-examine Kauffman.

Appellate counsel identifies a third possible trial court error as the court's overruling Karion Thomas' hearsay and improper rebuttal objections to Joseph Lizarraga reading his prior statement to law enforcement. ER 801(d) and another *Thomas* case controls this possible assignment of error. The rule reads:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other

proceeding, or in a deposition, or (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (iii) one of identification of a person made after perceiving the person. . . .

At trial, Karion Thomas challenged the credibility of Joseph Lizarraga by suggesting that Lizarraga never reported being choked. This challenge freed Lizarraga to testify to his prior statement.

In *State v. Thomas*, 150 Wn.2d 821, 865, 83 P.3d 970 (2004), this court held that, if cross-examination raises an inference that the witness changed her story in response to an external pressure, then whether that witness gave the same account of the story prior to the onset of the external pressure becomes highly probative of the veracity of the witness' story given while testifying. The proponent of the testimony may then show that the witness' prior consistent statement was made before the witness' motive to fabricate arose in order to show the testimony's veracity.

Finally, appellate counsel identifies as possible error the use of the predisposition report to show proof of Karion Thomas' criminal history at sentencing. RCW 13.40.150 controls this question and sanctions the use of the report. RCW 13.40.150(1) reads:

> In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information.

RCW 13.40.150(3) declares:

> Before entering a dispositional order as to a respondent found to have committed an offense, the court shall hold a disposition hearing, at which the court shall:

9

. . . .

(c) Consider any predisposition reports.

In *State v. J.A.B.*, 98 Wn. App. 662, 991 P.2d 98 (2000), this court rejected a juvenile

offender's argument that basing his standard range on the criminal history in the

disposition report violated his right to due process.

CONCLUSION

We deny Karion Thomas any relief on appeal. We grant Karion Thomas'

appellate counsel's motion to withdraw.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

10